Van Voobhis, J.
The defendants appeal, pursuant to permission granted by Judge Fijld, from judgments of the Appellate Division, First Department, which affirmed judgments of Supreme Court, New York County (Klein, J.), convicting each of the defendants of attempted extortion.
The defendants, police officers, were convicted of attempting to obtain $500 from Ralph Cozzino by threatening to accuse him of a crime and cause him to be arrested and prosecuted. The victim had been convicted of a felony and a misdemeanor. He had been committed to institutions as a mental defective having a mental age of eight years. During the course of the trial a police officer (McPhillips) testified that defendant Flynn had stated he would split the $500 to be obtained from Cozzino with him and cut defendant Byrne out of the deal. Thereupon the attorney representing both defendants informed the court that he could not continue to represent both defendants because it now appeared there was a conflict of interest between his clients. New counsel was assigned to represent Flynn. New counsel informed the court that he did not believe Flynn could be adequately represented at that late stage by new counsel. The original attorney moved for a mistrial upon the ground that he could not continue to represent either defendant because of privileged communications received from Flynn. Newly assigned counsel for Flynn moved for a mistrial. The motions were denied.
*213 It is argued in behalf of both defendants and chiefly in behalf of defendant-appellant Flynn that it was error not to declare a mistrial when the evidence disclosed an important conflict of interest between the defendants who were both represented by the same counsel; that it was error not to allow Flynn’s substituted counsel sufficient time to prepare for trial; that his constitutional right to representation by counsel at every stage of the trial was violated when he did not have the benefit of counsel for four days during the course of the trial.
At the commencement of the trial there was no reason on the part of Mr. Mendelson, who represented both defendants, to assume that there would be a conflict of interest between his two clients. It may be unwise for an attorney to undertake such dual representation in view of the possibility of unforeseen conflicts arising during the trial, but there is no reason to believe that Mendelson acted otherwise than entirely in good faith. As soon as the police officer (McPhillips) unexpectedly testified that defendant Flynn had stated that he would split the $500 to be obtained from Cozzino with him and cut defendant Byrne out of the deal, an obvious conflict arose. If McPhillips ’ testimony was true, Byrne would not be exonerated as matter of law, yet if the jury believed McPhillips it would militate in Byrne’s favor. The jury might consider that, although it indicated that Byrne would have been a willing recipient of this proffered bribe, he would not have participated in the money if the project had come to fruition and that this might somewhat mitigate the seriousness of his conduct. Unless Byrne withdrew from the enterprise, this would not legally amount to a defense, but judicial notice must be taken that juries may be affected by such factors which can be utilized by counsel as part of their tactics in conducting a trial. The jury did, of course, have McPhillips’ testimony before them and still they convicted both Byrne and Flynn. It may have been a matter of judgment for trial counsel for Byrne to decide whether to attempt to undermine McPhillips before the jury or to bank on his testimony. Insofar as Flynn was concerned, there could have been no doubt. It was necessary for Flynn’s trial counsel to attack McPhillips and destroy his credibility if possible. It is difficult to conceive how a lawyer in Mr. Lenefsky’s situation, newly retained to represent Flynn at this juncture, could have *214 entered the trial after the jury had been drawn, and it had progressed for four days, even after McPhillips’ direct examination had been completed which Lenefsky had not heard, and then, without having been versed in the atmosphere of the trial or even in what McPhillips had testified except at second hand, proceed effectively to cross-examine him. He did not even have a transcript of the testimony of McPhillips on direct or of any of the previous witnesses. Even if he had had a typewritten copy of the testimony, that would have been no substitute for the overtones or undertones of a trial to which the antennae of a trial lawyer are sensitive and which bear importantly on his effectiveness before court or jury.
That this presents a question of law for our review is demonstrated by Glasser v. United States (315 U. S. 60), where a new trial was granted for the reason that a defendant in a conspiracy case (to defraud the G-overnment by bribery of a G-overnment officer) was held to have been deprived of the assistance of counsel, contrary to the Sixth Amendment, where, over his objection, the court appointed his counsel to represent also a codefendant, which was done with notice to the Judge that their interests might be inconsistent, and where the counsel’s defense of the first defendant was rendered less effective than it might have been if he had represented that defendant alone. The right to have the assistance of counsel was held to be too fundamental to be made to depend upon nice calculations by courts of the degree of prejudice arising from the denial. In asking to be excused at the trial, counsel had told the trial court, ineffectually, that certain conversations would be binding on one defendant but not another, “and Mr. Glasser feels that if I represent Mr. Kretske the jury would get an idea that they are together ” (315 U. S., p. 68). The Supreme Court said at page 71: “ The possibility of the inconsistent interests of Glasser and Kretske was brought home to the court, but instead of jealously guarding Glasser’s rights, the court may fairly be said to be responsible for creating a situation which resulted in the impairment of those rights.” The Glasser case was followed, and new trials granted where conflict of interest developed during the trials in People v. Powell (21 A D 2d 789) and People v. Sprinkler (16 A D 2d 705).
*215 It would seem to make little difference whether or not counsel is assigned or privately retained under such circumstances. The Trial Judge in denying a mistrial stated: “ If I did order a mistrial, in effect I would be making an announcement to every lawyer in this Court that any time during the course of a trial, after all of the People’s testimony is in, or at any time a lawyer who represents multiple defendants can get up and say, ‘ Tour Honor, there is a conflict of interests between my clients and I cannot proceed ’, and in that way effect a mistrial, and very often make it impossible for the People to proceed.”
If that were what happened in this instance, we would be inclined to agree with the Trial Justice. That does not appear to have been what occurred on this trial. No one questioned Mr. Mendelson’s good faith in going to trial as attorney for both defendants. It was natural to assume that both were guilty or that neither was guilty, and that the issue would be whether Cozzino told the truth or was lying throughout. The testimony of McPhillips came as a surprise. This damaging admission or declaration by Flynn was not included in McPhillips’ testimony before the Grand Jury, nor had it been revealed except to the District Attorney.
The reaction of counsel for the Legal Aid Society is revealing. After Mendels on withdrew as counsel for Flynn, an adjournment was taken for a week, and for four days Flynn was without counsel. He was also without funds. The Trial Justice at first sought to procure the Legal Aid Society to represent him, but legal aid counsel stated to the court that
‘ ‘ we are in no position at this late stage of the game to come in and properly represent this defendant.
“ We feel it would be unfair to the defendant and also to the Legal Aid or any attorney from the Legal Aid to represent the defendant at this late stage.
‘ ‘ Furthermore, we had no voice in the selection of the jurors of this trial, and in fact Mr. Mendelson did represent both of these defendants. I am quite sure the jurors got the impression that anything that perhaps was said by the attorney on behalf of one is binding on the other and vice versa, and the guilt or innocence of one may rub off on the other.
1 ‘ For that reason we feel it is too late in the game to have anyone from our Society to represent this man properly.”
*216 On this basis the Trial Justice relieved Legal Aid of its assignment. If it was a sufficient basis for that, it was also ground for mistrial, because the same argument would make effective representation by any attorney difficult or impossible.
What occurred was less damaging to Byrne, and we would be less inclined to grant a mistrial as to him unless a new trial were granted to Flynn. The argument in Byrne’s behalf centers, largely, on the idea that at the outset of the trial the jury were given to understand that he and Flynn should stand or fall by the same criteria, that if one were guilty the other was also and vice versa. If his counsel had known of McPhillips ’ testimony from the outset, the inference is that different trial tactics would have been adopted, both in the drawing of the jury and in leading them to believe that the two defendants ’ interests were hostile. Since a new trial is granted to Flynn, it should also be granted to Byrne.
The judgments of conviction should be reversed and a new trial be granted as to both defendants.
Chief Judge Desmond and Judges Fuld, Burke, Scileppi, Bergan and Keating concur.
Judgments reversed and a new trial ordered as to both defendants.