OPINION OF THE COURT
Fuchsberg, J.
After a trial by jury, Jose Medina was convicted of rape in the first degree (Penal Law, § 130.35) and burglary in the first degree (Penal Law, § 140.30). Dismissing a lesser included count, the Appellate Division affirmed. On this appeal to us, the appellant now asserts that (1) he was denied effective assistance of counsel because the Trial Judge refused to replace his court-appointed lawyer and thus improperly compelled him to defend himself and (2) the evidence was insufficient to meet the corroboration standards then required to support a conviction for rape. On the analysis which follows, we conclude that both contentions are lacking in merit.
We begin by setting forth the operative facts bearing on the commission of the crime itself. The prosecutrix, a young woman of 19, testified without contradiction that on May 23, 1973 the appellant, after putting her in a terrorized state by breaking into her locked Manhattan apartment at 3:00 a.m., compelled her to submit to acts of sexual intercourse and sodomy. After being disturbed by a clawing and rustling sound, she discovered him crouched on the floor with a knife in his hand. Presumably, Medina, a complete stranger, had gained entrance through an iron window gate which, previously in good condition, had been pried apart. The knife he held had been taken from her kitchen.
These additional items of proof bear particularly on the issue of corroboration: While the victim, having been forced to remove all her clothes, was still unclad the appellant opened the apartment door to admit an accomplice who, Medina announced, would also take his turn at raping her. At that juncture, the police, who arrived in response to a radio report that intruders had been seen entering the building, apprehended both men before either could make good his escape;[1] in *204 his haste to depart, Medina apparently had no time to get back into his underwear top and shorts; easily identified by their distinctive colors, both garments were found in the apartment; at the police precinct it was discovered that Medina was clothed only in his street clothes. Findings on medical examination made at a nearby hospital soon after the event were that the prosecuting witness, previously virginal, still possessed an intact hymen, that there were no spermatozoa in her genital organs and that she bore no signs of physical injury; the examining physician explained, however, that it was possible to penetrate her vagina for one inch without rupturing the hymen; for her part, the prosecuting witness described to the jury how Medina, though twice entering her body, encountered too much difficulty to consummate sexual intercourse and had proceeded to engage her in a forced act of cunnilingus.
Before describing the subsequent course of events relevant to the right to counsel issue, we pause to examine appellant’s contention that there was a failure to prove the necessary corroboration. In May, 1973, the Penal Law required independent evidence which "tended” to establish both that there had been an attempt to engage the victim in sexual intercourse and that force was used in that endeavor (former Penal Law, § 130.15, L 1972, ch 373). This evidence could be either direct or circumstantial (People v Bercume, 38 AD2d 356, 358; People v Dow, 34 AD2d 224, 228, affd 28 NY2d 860).
The statutory standards here were well met. That the appellant’s underwear was found in the victim’s apartment rather than under the appellant’s outer clothes was circumstantial evidence of a most telling nature as to his participation in the sexual encounter which the prosecuting witness described. The distressed state in which the police found the victim at the time of her rescue, the lateness of the hour, the role of the knife, the twisted window gate, without more and most certainly in combination, easily took the case to the jury on the question of force (see People v Yannucci, 283 NY 546, 550; People v Dow, supra, pp 228-229; People v Watson, 57 AD2d 143, 148).
Turning now to the less graphic, but here not less significant, events relating to the claimed impairment of right to counsel, these appropriately may be said to have begun on May 23, the date of Medina’s arrest. From then until the trial itself was begun the following October, appellant was never *205 without a lawyer. Initially, both defendants were provided with counsel by the Legal Aid Society. But, about a month later, to avoid any possible conflict of interest between the two codefendants, the court, pursuant to article 18-B of the County Law and rule 606.1 of the Supreme Court, Appellate Division, First Department, appointed a private attorney to look to Medina’s interests alone. This representation of the appellant continued uneventfully during the ensuing months until the trial was about to get underway.
On September 11, a month before trial, the People proffered a plea bargain. When Medina indicated that he was not then ready to accept it, the likelihood that the case would have to be tried in October became obvious. On October 2, Medina having finalized his rejection of the plea offer, the plan for trial that month became firm and, on October 5, the court again alerted the parties to be prepared to proceed, this time upon the completion of another trial then in progress in the part to which the Medina case had been assigned. On none of these dates — indeed, so far as the record reveals, during all the preceding months — was there the slightest hint that the appellant was harboring any dissatisfaction with his lawyer. Even on October 9, when the appellant was in court for the call of the case preparatory to commencement of its trial the next day, every indication was that both sides were ready to proceed.
On the morning of October 10, however, Medina’s counsel advised the court that on the preceding day his client had informed him that he had no confidence in him as his lawyer. Appellant personally confirmed this statement. All indications from the transcript are that the Trial Judge then took pains to reassure the appellant of the experience and competence of his counsel.[2] The court did not rest on this alone. Its conscientious and persistent efforts to ascertain the cause of Medina’s unhappiness continued over the next two days. But they proved fruitless.
Little by little some explanations were eked out, but they seemed almost entirely frivolous or specious. His belaboring of counsel as inadequate was for such things as failure to move to dismiss the indictment on the ground that the District Attorney’s name appeared in type rather than script on the *206 copy given to the appellant and for having failed to move to suppress evidence, even though there was no suppressible evidence in the case. He had even expressed similar displeasure because other "motions” whose nature he could not specify had not been made. Encouraged to elaborate, the most he would say was "I don’t know. You’re supposed to be the lawyer. You make the motions”. Other complaints read like semisophisticated and belated second-guessing of his lawyer’s professional judgment: for instance, he complained that he had not been put before the Grand Jury and that his attorney had relied on the far more informative preliminary hearing minutes rather than on a bill of particulars. Crystallizing his thinking, in the end Medina stated that what disturbed him basically was that the lawyer was "putting in doubt the democratic process. That’s all”.
After a great deal of colloquy, the Judge painstakingly explained to the appellant that his court-appointed lawyer could not be changed at will and without cause and that, construing the application as one to discharge counsel, the request would be denied. Medina then shifted his ground, stating that he "did not feel ready for trial yet”, but never did he satisfactorily indicate how a new attorney or an adjournment would add to his preparation. Despite this, the court offered to delay the daily commencement of trial to allow additional time for him to confer with counsel, promised to lend assistance in the procurement of witnesses, and in fact to "give [you] anything [you] want”. All to no avail. From the cold record what comes through is an impression that it would have been perfectly permissible for the trial court to have perceived in appellant’s responses an attempt — inchoate or deliberate — either to put off his day of reckoning or obtain delay for delay’s sake alone.
When the appellant would not accept the court’s decision that there was no basis for assigning a different counsel, the Judge warned him that, if he persisted in his refusal, he would have to try his case himself. It was also made clear to him that, while it was his right to proceed pro se, such a course would be unwise. To this Medina’s ready answer was that he nevertheless would rather do so. As was obvious from the adamancy with which he announced his decision, this waiver was not given perfunctorily. Nor was it cavalierly accepted. Even while respecting and accepting appellant’s determination to act contrary to its advice, the court contin *207 ued to manifest its concern by instructing counsel to sit next to his former client and hold himself available for consultation. These services were not utilized. Instead, after making motions and putting questions to the court, all with considerable articulateness and poise, Medina, whether to carry out an ill-fated trial strategy, or in abandonment of some earlier plan, or for some totally different reason best known to him, chose to remain almost entirely mute for the balance of the trial. An exception was when he pressed the court for assurance that the jury would be shown the complainant’s hospital record; he could have believed it dispositive.
In treating with the questions that arose regarding the matter of counsel, the trial court was governed by now well-settled principles. Under our State and Federal Constitutions, an indigent defendant in a criminal case is guaranteed the right to counsel (NY Const, art I, § 6, People v Koch, 299 NY 378, 381; US Const, 6th Amdt; Argersinger v Hamlin, 407 US 25; Gideon v Wainwright, 372 US 335). The fulfillment of that obligation calls for more than merely pro forma appointment of or service by a member of the Bar. The legal assistance provided must be "effective”. (Cf. People v Droz, 39 NY2d 457; People v La Bree, 34 NY2d 257; People v Bennett, 29 NY2d 462.) To insure that it is, Trial Judges have a continuing duty, not to be lightly eschewed, to see to it that the proceedings are conducted with solicitude for the essential rights of the accused (cf. People v Moulton,. 43 NY2d 944). They should carefully evaluate serious complaints about counsel (see People v Mason, 22 AD2d 957, 958; United States v Morrissey, 461 F2d 666, 670; cf. United States ex rel. Thomas v Zelker, 332 F Supp 595 [Frankel, J.]).
However, this is far from suggesting that an indigent’s request that a court assign new counsel is to be granted casually (People v Brabson, 9 NY2d 173, cert den 369 US 879; People v Yates, 45 AD2d 778). For, among other things, practical constraints on the administration of a program for providing legal assistance dictate that "as long as assigned counsel are men of ability and integrity, the discretion and responsibility for their selection rest with the court” (People v Brabson, supra, p 181; see, also, People v Jordan, 49 AD2d 660, 661). But this does not gainsay the fact that where "good cause” does exist a court is well advised to effect a change of counsel (e.g., United States v Burkeen, 355 F2d 241, 245, cert den sub nom. Matlock v United States, 384 US 957; United *208 States v Curtiss, 330 F2d 278, 280 [Marshall, J.]; ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services, § 5.3, p 49).
In deciding whether "good cause” exists, a court must take into account such circumstances as whether present counsel is reasonably likely to afford a defendant effective assistance and whether the defendant has unduly delayed in seeking new assignment. The Commentary to section 5.3 of the ABA Standards (op. cit, p 51) balances these considerations quite nicely: "Since a relationship of mutual confidence between lawyer and client is important to the lawyer’s fulfillment of his professional functions, where good cause is shown by the defendant why that confidence does not exist the court should substitute counsel. Of course, the defendant should not be permitted to use this opportunity as a device to obstruct the orderly processes of the courts. If a last-minute motion for substitution of counsel is made for the purpose of delay, the court can recognize it as such and either refuse to make a new appointment or deny a continuance if one is made.”
So Trial Judges have been found to have abused their discretion by assigning an attorney to represent two defendants where a conflict of interest exists (see, e.g., Glasser v United States, 315 US 60, 75-76; People v Byrne, 17 NY2d 209, 215-216; cf. People v Gomberg, 38 NY2d 307, 313-314) or where they have required a defendant to go to trial with an assigned attorney who has not adequately investigated his client’s history of mental disorder (see, e.g., Brubaker v Dickson, 310 F2d 30, 38; cf. People v Bennett, 29 NY2d 462, supra). But refusal to assign different counsel has been upheld where a defendant was guilty of delaying tactics (United States v Burkeen, 355 F2d 241, supra; United States v Bentvena, 319 F2d 916, cert den sub nom. Ormento v United States, 375 US 940) or where tensions between client and counsel on the eve of trial were the precipitate of differences over strategy (United States v White, 451 F2d 1225; United States v Black, 412 F2d 687, cert den 396 US 1010).
Measured against such criteria, we cannot say that in the case before us, the court abused its discretion in refusing to appoint another lawyer. Not only was Medina’s dissatisfaction first stated and his desire for new counsel first made known at the twelfth hour, but he offered no reason why he could not have done either earlier. Those of his criticisms of *209 counsel which were uttered with sufficient specificity to be evaluated related to matters which would have been known to him long before the day of trial. Indeed, he never attributed the timing of his motion to any of these.
Moreover, it is most doubtful that the criticisms were really for incompetence. Rather, as best as can be gathered from Medina’s statement to the court, his chief plaint was over his lawyer’s failure to agree with his client’s concepts as to appropriate trial tactics, a reason which the court was free to regard as insufficient cause for a cognizable claim of lack of confidence. True it is that appellant urged, for the first time on appeal, that counsel was derelict in failing to obtain the hospital report. But the record does not show that to be the fact. It indicates only that, in his colloquy with the court, Medina asked for a copy of the report. In order to do so, he had to have known of its existence and probably of the potential importance of its contents. Had the lawyer of whom he was then trying to rid himself not taken the report into account in preparing for trial, one would expect that the appellant would have brought that to the attention of the trial court. He never did.
It may also be significant that it had become known by then that the young prosecuting witness, who had left New York to resume residence in her native State and had been brought back specially for the trial, had indicated reluctance to return willingly if the case was adjourned.
Under all these circumstances, the court, in refusing to grant the application for change of counsel and in rejecting the supplementary request for delay, acted within the parameters of its discretion in order to prevent orderly processes from being obstructed without good cause.
Furthermore, when, in the face of the court’s carefully explained ruling denying a change of counsel or an adjournment, Medina, who was not totally unfamiliar with criminal procedure, so determinedly and so unequivocally insisted on rejecting counsel and proceeding pro se, the court had no recourse but to permit him to do so (Faretta v California, 422 US 806; People v McIntyre, 36 NY2d 10). By then it had had an ample opportunity to observe the appellant’s capacity to make an intelligent choice and had repeatedly warned him of the risks of self-representation. It therefore was in a position to ascertain that the waiver of counsel was "knowing and *210 intelligent” (People v McIntyre, supra, at p 17).[3] Surely, it did not have to go so far as to yield to appellant its power to decide when and if assigned counsel was to be relieved (People v Higgins, 23 AD2d 504, affd 16 NY2d 751; cf. People v Bostic, 34 AD2d 597 [Cooke, J.]). From Medina’s point of view, that it might have been inadvisable for him to act as his own lawyer did not destroy his right to make a calculated decision to do so. (See Maynard v Meachum, 545 F2d 273, 278-279; United States ex rel. Testamark v Vincent, 496 F2d 641, 643-644, cert den 421 US 951.)
Accordingly, we cannot say that, in the manner in which it exercised that authority in this case, the court did not strike a proper balance which took into account both its obligations to this particular defendant and its more general obligations to supervise the conduct of the trial before it (cf. People v Kelly, 44 NY2d 725, affg on opn of Mr. Justice Samuel J. Silverman at 60 AD2d 220). The order of the Appellate Division is therefore to be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke.
Order affirmed.

. The accomplice was indicted with Medina, but he absconded before trial. The appellant was therefore tried alone.

. The public record of his admission to the Bar indicates that appellant’s trial attorney had been in practice for 38 years.

. The rulings on the counsel questions in the present case were made by the trial court at a time before our decision in People v McIntyre (supra).