Wachtler, J.
In connection with a robbery of a Brooklyn grocery store in August, 1966, the defendant John McIntyre, was indicted for murder in the first degree of the proprietress, one Ida Kaplan, and robbery in the first degree. After a jury trial the defendant was convicted and sentenced to serve a term of life imprisonment for murder and a term of from 15 to 30 years on the robbery conviction, both sentences to run concurrently. Prompted by evidence adduced at a posttrial hearing the Appellate Division reversed (People v. McIntyre, 31 A D 2d 964) and ordered a new trial indicating that the image of justice would be better served. The instant appeal stems from events occurring at the second trial.
After the jury had been drawn but not yet impaneled, the defendant, through counsel, asked that he be permitted to try the case himself and that counsel be permitted to sit with him *13 as an adviser. The trial court inquired into the defendant’s background. Defense counsel responded by noting that the defendant had attended college for one year and was last employed as a furniture designer. Whereupon the court asked the defendant if he thought counsel was incompetent to defend him. After the defendant answered that counsel was very competent, he was ordered to sit down.
The ensuing portion of the colloquy is revealed in the following excerpt from the record:
'‘ The Court: Of course you know exactly what I mean. You know exactly what’s going to happen. The defendant will start questions, there will be an objection, objection sustained. The defendant will start looking at the ceiling and looking at the wall, and he won’t know what to do.
“ Defendant: I wouldn’t.
“ The Court: He thinks he’s probably the greatest lawyer and God’s gift to the legal profession. That comes after talking with three or four jailhouse lawyers. But you and I, Mr. Legum [defense counsel] know that he’s not a lawyer.
“ Mr. Legum: The defendant asks for permission to speak to you himself as to why he wants to represent himself.
“ The Court: No, he can talk through you. He can tell you what he intends to do. He doesn’t know at the very outset, I’m being asked to permit a man to defend himself when he doesn’t know at the very beginning that he’s not under any obligation to defend himself. He said to you and I heard him, that he’s under an obligation to defend himself.
“ Is the jury on the way?
“ Defendant: F * * * the jury. I’m not going to trial. (Whereupon the defendant jumped up, knocked the chair over.)
“ The Court: All right, all right. Put the handcuffs on the defendant. Tie him to the chair, please.”
After lecturing the defendant on courtroom decorum and eliciting a promise of good behavior from the defendant, the court formally denied the pro se motion. The record indicates that the denial was based on the defendant’s outburst, the defendant’s assertion that assigned counsel was very competent and the court’s general inquiry. n
The motion was subsequently denied for a second time and the case proceeded without further interruption. The jury *14 found McIntyre guilty of murder and robbery, both in the first degree.
On appeal the Appellate Division affirmed, finding that the trial court was justified in denying the pro se motion in light of the defendant’s inability to maintain self-control. Mr. Justice Hopkins interpreted the record differently and dissented on the ground that the defendant’s conduct was a direct reaction to the wrongful denial of his request.
The threshold issue presented in this case is the nature and extent of a criminal defendant’s right to conduct his own defense.
In the wake of recent landmark decisions in the Supreme Court (e.g., Argersinger v. Hamlin, 407 U. S. 25; Gideon v. Wainwright, 372 U. S. 335; Powell v. Alabama, 287 U. S. 45) and the long and uniform recognition of the right to counsel in criminal proceedings by New York courts (e.g., People v. Koch, 299 N. Y. 378, 381; People ex rel. Saunders v. Board of ‘Supervisors, 1 Sheld. 517, 524), an assertion of the right to defend pro se is ironic and perhaps enigmatic. Nonetheless the right to self-representation -embodies one of the most cherished ideals of our culture; the right of an individual to determine his own destiny. This concept was dramatically articulated in United States ex rel. Maldonado v. Denno (348 F. 2d 12, 15): “ Moreover, even in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice ‘ with eyes open ’.”
However, we cannot disregard the countervailing interest of society in the equally powerful ideal that our criminal justice system must determine the truth or falsity of the charges in a manner consistent with fundamental fairness. Any attempt to reconcile these ideals which are inherently antagonistic in this context raises grave constitutional (both State and Federal) statutory and decisional issues. In light of the -multifaceted problems generated by a motion to proceed pro se, the task of the trial court is exceedingly difficult.
At the outset we note that the right to defend pro se is deeply ingrained in our common law. The constitutional dimension of the right to defend pro se is evidenced by the fact that it has *15 been sustained by various sections of the Federal Constitution (see, e.g., Adams v. United States ex rel. McCann, 317 U. S. 269 [correlative right of the Sixth Amendment right to counsel]; United States v. Plattner, 330 F. 2d 271 [implicit in Sixth Amendment rights, and protected under the liberty clause of the Fifth Amendment due process]; compare United States ex rel. Maldonado v. Denno, 348 F. 2d 12, supra [the Sixth Amendment and the Fifth Amendment due process right to essential fairness]; Cappetta v. State, 204 So. 2d 913 [Fla.] [Sixth Amendment and Fourteenth Amendment due process clause] with Juelich v. United States, 342 F. 2d 29 [the right to a fair trial demands representation by counsel]). Additionally, the right to self-representation was codified in the Judiciary Act of 1789 (ch. 20, § 35, 1 U. S. Stat. 73, 92) and is presently contained in the United States Code (tit. 28; § 1654). Notwithstanding this plethora of authority, the United States Supreme Court has never specifically determined whether or not the right to conduct one’s own defense is constitutionally guaranteed. This question may be resolved shortly in the case of Faretta v. California (No. 73-5773, argued Nov. 19, 1974).
However, our court need not reach the question of whether the right to defend pro se is founded in the Federal Constitution because the New York State Constitution and criminal procedure statute clearly recognize this right (N. Y. Const., art. I, § 6; Code Crim. Pro., § 8, subd. 2; CPL 170.10, subd. 6 [information or misdemeanor complaint]; 180.10, subd. 5 [felony complaint] ; 210.15, subd. 5 [indictment]). Furthermore, our court has repeatedly acknowledged the defendant’s right to conduct his own defense (see, e.g., People v. Bodie, 16 N Y 2d 275; People v. Koch, 299 N. Y. 378; People v. McLaughlin, 291 N. Y. 480; People v. Price, 262 N. Y. 410).
Unlike the right to counsel which by virtue of judicial scrutiny has ,been well defined in recent years (see, e.g., People v. Bennett, 29 N Y 2d 462; People ex rel. Menechino v. Warden, 27 N Y 2d 376) the habitations, if any, on the right to defend pro se remain largely undefined. For a variety of reasons we are hesitant to sanction the unfettered exercise of this right. An examination into the factors motivating a defendant to elect to proceed alone will demonstrate some of the dangers inherent in that choice.
*16 Generally, a defendant desires to conduct ihis own defense for any one or a combination of various reasons. Probably the most common reason, is the desire to evoke the jury’s sympathy for a lone defendant pitted against the Goliath of the State (see, e.g., People v. Chessman, 38 Cal. 2d 166; Note, Right of an Accused to Proceed Without Counsel, 49 Minn. L. Rev. 1133). A corollary situation is the pro se defendant who is influenced by á blind faith belief in his innocence and the infallibility of justice (see, generally, Laub, Problem of the Unrepresented, Misrepresented and Rebellious Defendant in Criminal Court, 2 Duquesne L. Rev. 245).
Frequently, the pro se defendant is motivated by dissatisfaction with the trial strategy of defense counsel or a lack of confidence in ihis attorney (e.g., Adams v. United States ex rel. McCann, 317 U. S. 269, supra; Burstein v. United States, 178 F. 2d 665). Disagreement over trial strategy is particularly frustrating to a defendant in light of holdings indorsing counsel’s view when a difference of opinion arises (e.g., Nelson v. California, 346 F. 2d 73). Another consideration may be a desire to save legal costs when the defendant is of moderate resources and not eligible for assigned counsel (e.g., United States v. Redfield, 197 F. Supp. 559, 567-568, affd. 295 F. 2d 249, cert. den. 369 U. S. 803).
Other defendants, particularly those involved in “ political ” trials, view counsel as an extension of the oppressive system which they distrust (see Comment, Self Representation in Criminal Trials: Dilemma of- the Pro Se Defendant, 59 Cal. L. Rev. 1479) while others seek to secure various tactical advantages. Clearly delay and confusion are foreseeable by-products of pro se defense. More significantly, a defendant acting pro se may thus avoid taking the witness stand yet still influence the jury by his demeanor at trial (see Note, Pro Se Defendant’s Right to Counsel, 41 Univ. of Cinn. L. Rev. 927).
While such machinations may conceivably redound to the defendant’s disadvantage, the experienced and wily defendant often refuses counsel in order to lay the foundation for a mistrial or a later attack of the conviction (Sanchez v. United States, 311 F. 2d 327, cert. den. 373 U. S. 949).
In light of the manifold and conflicting principles permeating the assertion of his right to defend pro se, we conclude that it *17 is not absolute but subject to certain restrictions. Such limitations must ,be implemented in order to promote the orderly administration of justice and to prevent subsequent attack on a verdict claiming a denial of fundamental fairness.
A defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues.
So that convicted defendants may not pervert the system by subsequently claiming a denial of their pro se right, the pro se request must be clearly and unconditionally presented to the trial court. (See United States v. Plattner, 330 F. 2d 271, 276.) Inasmuch as a defendant whose rights have been safeguarded by counsel cannot claim that by having counsel he has been denied a fair trial or due process (cf. Singer v. United States, 380 U. S. 24) the right to defend pro se lacks the force and urgency of the right to counsel and there is no necessity to inform every defendant of his right to conduct his own defense (see People ex rel. Maldonado v. Denno, 348 F. 2d 12,17, supra).
Prior to the commencement of the trial, the potential for obstruction and diversion is minimal. Therefore, we- deem a pro se application to be timely interposed when it is asserted before the trial commences (People v. Spohn, 43 A D 2d 843). At that juncture the court may conduct a thorough inquiry thereby averting delay and confusion. Once the trial has begun the right is severely constricted and will be granted in the trial court’s discretion arid only in compelling circumstances.
We turn now to the second requirement. Implicit in a defendant’s assertion of his right to defend pro se is the decision to disavow the constitutional right to counsel. For such a waiver to be effective, the trial court must be satisfied that it has been made competently, intelligently and voluntarily (Johnson v. Zerbst, 304 U. S. 458). In determining the defendant’s competency to waive counsel the court may properly inquire into the defendant’s age, education, occupation and previous exposure to legal procedures.
Although the typical, defendant pro se may lack certain legal skills, mere ignorance of the law cannot vitiate an effective *18 waiver of counsel as long as the defendant was cognizant of the dangers of waiving counsel at the time it was made (cf. United States v. Terranova, 309 F. 2d 365; United States v. Arlen, 252 F. 2d 491; People v. Terry, 224 Cal. App. 2d 415). To hold otherwise would render the right to defend pro se an empty one indeed. Consequently, where there has been a pro se defense, the defendant may only claim that 'the proceedings were so unfair as to deny him due process when the trial viewed as a whole amounts to a travesty of justice.
The third requirement concerns the forfeiture of the pro right by the defendant. Just as a defendant may lose his right of confrontation (People v. Palermo, 32 N Y 2d 222) so may he lose his right to represent himself by engaging in disruptive or obstreperous conduct (see Mayberry v. Pennsylvania, 400 U. S. 455; People v. Allen, 37 Ill. 2d 167, cert. den. 389 U. S. 907). When a defendant’s conduct is calculated to undermine, upset or unreasonably delay the progress of the trial he forfeits his right to self-representation.
In declaring such a forfeiture, the Trial Judge “ must proceed by skill and suasion ” (United States v. Dougherty, 473 F. 2d 1113, 1126) to insure the fair and efficient prosecution of the charges and to avoid trammeling the essential rights of the accused. Of course, the trial court is afforded wide latitude in maintaining courtroom decorum. Nonetheless, the court may not validate an erroneous denial of a pro se motion on the basis of a postruling outburst (United States v. Dougherty, supra).
Applying these principles to the instant case, we conclude that it was error for the Trial Judge to deny the defendant’s pro se motion.
Inasmuch as the pro se motion was unequivocal and timely having been interposed prior to the prosecution’s opening statement (Code Crim. Pro., § 388, subd. 1; People ex rel. Steckler v. Warden of City Prison, 259 N. Y. 430; see CPL 1.20, subd. 11; 260.30) we turn to the contention that the defendant’s inability to maintain self-control justified the court’s denial. Here the record is susceptible of two interpretations with respect to the sequence of events. The Appellate Division majority considered the outburst to have preceded the trial court’s denial of the motion, while the dissent deemed the disruptive behavior to have been a direct reaction to the denial. .
*19 We believe that on. the record before us either interpretation renders the denial of the motion erroneous. Just as the court may not rely on a postruling outburst to validate an erroneous denial, the court may not goad the defendant to disruptive behavior by conducting its inquiry in an abusive manner calculated to belittle a legitimate application. An outburst thus provoked will not justify the forefeiture of the right of self-representation.
Where a court feels that the motion is a disingenuous attempt to subvert the overall purpose of the trial (as may well have been the case here), the proper procedure is to conduct a dispassionate inquiry into the pertinent factors. Here the trial court denied the motion without eliciting the information which might have warranted a denial of the motion.
Accordingly, the order of the Appellate Division should be reversed and the matter remanded for a new trial.