◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH HARRIS, Also Known as SAHARABE, Appellant. — Appeal by defendant from a judgment of the County Court, Orange County (Isseks, J.), rendered September 8, 1977,

convicting him of two counts of robbery in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. In two separate indictments, the defendant and one Charles Meriweather were jointly charged in each with robbery in the first degree and attempted robbery in the first degree. The indictments related to two separate incidents in which Meriweather and the defendant were alleged to have acted in concert. The indictments were consolidated but the defendant and Meriweather were tried separately. A jury acquitted the defendant of the attempted robbery counts but found him guilty of the robbery charges. He was sentenced to two consecutive terms of from 12½ to 25 years imprisonment. Each defendant was assigned counsel from the Orange County Legal Aid Society. Before trial, the defendants made a *pro se,* application for the court to conduct a hearing into claimed improprieties of a Legal Aid Society investigator. Although the precise allegations are not clear, a brief submitted by the People after oral argument states that the defendants claimed that the investigator had revealed defense strategy to the prosecutor's office. The investigator, in an affidavit, denied the allegations, and the court refused to conduct a hearing. At the pretrial *Wade* hearing, counsel for codefendant Meriweather renewed the request for an inquiry into the acts of the investigator. The record then reveals the following: "THE COURT: That is denied. MR. BROWN [Counsel for Meriweather]: We take exception. MR. FINKELSTEIN [Counsel for the defendant]: I join in those motions and take exception. MR. HARRIS [defendant]: I would like to represent myself. THE COURT: Yes, you will have that right. Mr. Finkelstein, you will be here as his attorney, as an advisor. MR. FINKELSTEIN: He wants to discharge me — THE COURT: You will not be discharged. You will be here to advise him. MR. MERIWEATHER: I want the same. THE COURT: Yes, you will have the same. You will be here as his attorney, Mr. Brown, so he can consult with you at any time. MR. BROWN: If I may clarify something, Your Honor, is the Court permitting him and allowing him to do his opening and summations and cross examination? THE COURT: He has that constitutional right. You are appointed as the lawyer and you are to be here as his lawyer for any assistance that he needs. MR. BROWN: All right, Your Honor. MR. SHERWIN [the prosecutor]: Concerning the alleged prosecutorial conduct — MR. BROWN: I object to any statement at this point, Your Honor. The Court made a ruling. If he wants to go under oath concerning this point in the hearing, I will take it under oath. THE COURT: Your application is denied, Mr. Sherwin. Proceed with the hearing. First, let me ask the court — Mr. Finkelstein and Mr. Brown, at any time if you have any difficulty with your clients, do they understand everything that you have talked to them about? MR. FINKELSTEIN: Yes, sir. THE COURT: All the arguments that they made; they appear to be fully competent to handle their affairs. MR. FINKELSTEIN: I don't think there is anything wrong with them defending themselves. THE COURT: I don't see anything either from the motion they made. The Court feels they are fully competent. MR. MERIWEATHER: I would like to say something, Your Honor. THE COURT: Go ahead. MR. MERIWEATHER: I would like to represent myself because I feel it is the only way that I would be able to bring out the explicit — THE COURT: I understand. I have to determine whether you are competent or not. MR. MERIWEATHER: I want to make a point, I am not a lawyer. THE COURT: You have this right. That is granted. MR. HARRIS: That is the same request. I would like to change him as my lawyer for a legal advice [*sic*]. THE COURT: Yes, that is taken care of already. All right, proceed." When the defendant's trial began, he delivered an opening statement to the jury in which he spoke at length of his prior and extensive criminal record. Thereafter, he attempted to establish that the People's witnesses had misidentified him as a result of improper police procedures. His efforts in this regard were so

damaging to his own case that his attorney, now acting solely in the capacity of a legal advisor, frequently sought to dissuade him from continuing the line of inquiry. The defendant was ultimately convicted of both robbery charges. We now reverse because the court failed to make sufficient inquiry into the defendant's understanding of the ramifications of his decision to represent himself at trial. Subject to certain qualifications, a defendant has a constitutional right to represent himself in a criminal proceeding. (See *Faretta v California*, 422 US 806; *People v Davis*, 49 NY2d 114; *People v McIntyre*, 36 NY2d 10.) As our Court of Appeals has said: "[a] defendant in a criminal case may invoke the right to defend *pro se* provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues." (*People v McIntyre*, *supra*, p 17.) In view of the fundamental importance of the right to effective assistance of counsel, however, a defendant's offer to waive that right may not be treated in a perfunctory manner (*People v Allen*, 39 NY2d 916, 917), nor cavalierly accepted. (*People v Medina*, 44 NY2d 199, 206.) Instead, he must be made fully aware of the consequences of his desire to represent himself (*People v Carl*, 46 NY2d 806, 808) and his decision to proceed *pro se* will be effective only if "the defendant was cognizant of the dangers of waiving counsel at the time [the waiver] was made". (*People v McIntyre*, *supra*, p 18.) The case at bar demonstrates a total disregard for these controlling principles. At no point after the defendant's request to proceed *pro se* did the court attempt to apprise him of the risks inherent in representing himself or of the value of counsel. Instead, the defendant's application was immediately granted after the court asked only if counsel had had any difficulty with the defendant and if the defendant had understood everything that counsel had spoken to him about. Such a perfunctory inquiry does not satisfy the standards which have been established to protect the fundamental constitutional right to counsel. Although the defendant was not a newcomer to the criminal justice system, his prior record and counsel's assurances did not vitiate the court's duty to explain the consequences of self-representation, nor did they supplant the need for a careful allocution to insure that the defendant's waiver was being knowingly and intelligently made. (See *Johnson v Zerbst*, 304 US 458, 464-465.) Mollen, P. J., Hopkins, Titone and Bracken, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment, with the following memorandum: In my view, the court's decision to permit defendant to proceed as his own attorney was unobjectionable. There is no dispute that two of the three prerequisites set forth in *People v McIntyre* (36 NY2d 10, 17) for permitting a defendant to handle his own defense were satisfied. His request was unequivocal and timely, and there was no indication that defendant had engaged in conduct which would prevent the fair and orderly exposition of the issues. The third requirement is that the waiver of the right to counsel be knowing and intelligent. As the majority recognizes, cases decided subsequent to *McIntyre* have held that a waiver of the right to counsel cannot be considered knowing and intelligent unless the defendant was aware of the dangers inherent in *pro se* representation. But it is not necessary that the court explicitly verbalize these dangers. This defendant is no stranger to the criminal justice system. He is an experienced defendant in criminal proceedings, with a lengthy criminal record stretching back at least to the mid-1960's. It can safely be presumed that he was well aware of the ramifications of his decision to represent himself, without having been told of them. Perhaps he chose this course simply because professional representation had so often failed him in the past, and he was all too well acquainted with the results of

unsuccessful assistance of counsel. At any rate, a defendant's familiarity with the criminal justice system has been held to be a factor to be considered when determining whether to grant a defendant's request to represent himself (see *People v Davis,* 49 NY2d 114, 119; *People v McIntyre, supra,* p 17). Having chosen to proceed as his own attorney and then having been convicted, defendant should not now be offered a second chance merely because the court did not explicitly state what defendant surely already knew. Indeed, the representation with which defendant provided himself was not as flawed as the majority indicates. He obtained for himself an acquittal on two charges of attempted robbery in the first degree. His trial tactic of informing the jury as to his prior convictions was calculated to soften the impact that this revelation was bound to have when the prosecutor would, inevitably, reveal it at a later point in the trial. His efforts at showing misidentification of him by the People's witnesses was another tactic that ultimately proved unsuccessful. But all these tactics were reasonable under the circumstances, and as such, would not amount to ineffective assistance of counsel (see *People v Aiken,* 45 NY2d 394; *People v Jackson,* 52 NY2d 1027). Indeed, "where there has been a *pro se* defense, the defendant may only claim that the proceedings were so unfair as to deny him due process when the trial viewed as a whole amounts to a travesty of justice" (*People v McIntyre, supra,* p 18). The issue here, however, is not the adequacy of defendant's representation, but rather, whether he should have been permitted to undertake that defense in the first instance. Since it is my view that a defendant who has intimate familiarity with the criminal justice system should not be allowed to escape the consequences of a conviction by asserting that he did not know the ramifications of his decision to represent himself, my vote is to affirm.