Ronald GRIPPO, Petitioner,

v.

Walter R. KELLY, Respondent,

and

Howard R. Relin, Intervenor.

No. 88–CV–1087C.

United States District Court,
W.D. New York.

Nov. 19, 1993.

·Jaeckle, Fleischmann & Mugel (James R. Arnone, of counsel), Buffalo, NY, for petitioner.

Howard R. Relin, Dist. Atty., Monroe County (Wendy Evans Lehmann, of counsel), Rochester, NY, for respondent and intervenor.

## DECISION AND ORDER

CURTIN, District Judge.

Petitioner, Ronald J. Grippo, filed this petition for writ of habeas corpus, complaining that his conviction in Monroe County Court on June 17, 1983, was obtained in violation of rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. The matter was referred to the Honorable Leslie G. Foschio for a report and recommendation, and the magistrate judge recommended that the petition be granted on the ground that petitioner was denied his right to have new counsel assigned, or alternatively, to proceed *pro se* at his criminal trial, in violation of the Sixth Amendment. The respondents filed objections to the magistrate judge's report and recommendation, and the court heard oral argument. Having considered the matter· *de novo* pursuant to 28 U.S.C. § 636(b)(1), I hereby deny the petition.

## DISCUSSION

Magistrate Judge Foschio denied all petitioner's claims in support of his petition for writ of habeas corpus except the claim that the trial judge's denial of Grippo's request to defend himself *pro se* violated Grippo's rights under the Sixth Amendment. The magistrate judge also decided *sua sponte* that Grippo's right to assistance of counsel was violated when the trial court did not allow Grippo's assigned counsel to be replaced by another lawyer.

After hearing counsels' arguments, it is clear that the only ground the court should seriously consider is whether petitioner's right to proceed *pro se* was violated. Grippo was indicted by a Monroe County Grand Jury on August 5, 1982, and was arraigned and assigned counsel the following day. Some time before May 22, 1983, Grippo moved to change defense counsel. The Honorable Robert P. Kennedy, Justice of the New York State Supreme Court, Supervising Calendar Judge for Monroe County, scheduled a hearing on the motion for May 22, 1983, and Grippo failed to attend the hearing.

On May 25, 1983, Grippo wrote a letter to Justice Kennedy, asking permission to proceed *pro se*. Justice Kennedy conducted a hearing on the motion on June 3, 1983 (trial commenced June 6). At the hearing, Justice Kennedy questioned Grippo about his education and his court experience. Kennedy then asked Grippo how he expected to be able to defend himself at trial when Grippo had already stated (in the May 25 letter) that he believed himself to be no match for a lawyer in the hearing that had been scheduled for May 22. Grippo had no response to Kennedy's question, but asked to speak to his public defender. After a discussion, Grippo asked for a change in counsel, which Justice Kennedy denied. Grippo's public defender joined the motion to assign a new lawyer, which Justice Kennedy continued to deny. On the first day of trial, June 6, 1983, Grippo's public defender moved to withdraw. The lawyer characterized Grippo's desire as "to either go *pro se* and have counsel assigned and have me discharged as counsel," Transcript, June 6, 1993, p. 3. The trial judge, Justice Celli, denied the motion, holding: "A determination has been made by Mr. Justice Kennedy ... The defendant is not entitled to select attorneys ... You will continue, sir." *Id.* p. 5.

The Supreme Court addressed the right of criminal defendants to proceed *pro se* in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In *Faretta*, the Court identified the criteria for evaluating a defendant's request to proceed *pro se* : the accused must "knowingly and intelligently" forgo "the traditional benefits associated with the right to counsel." *Id.* at 835, 95 S.Ct. at 2541. The *Faretta* Court noted that "weeks before trial, [defendant] clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," *id.;* and that defendant "was literate, competent and understanding and that he was voluntarily exercising his informed free will." *Id.* The Court concluded that "his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta*, 422 U.S. at 836, 95 S.Ct. at 2541.

■ A criminal defendant's right to assignment of counsel and his or her right to proceed *pro se* are mutually exclusive. *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir.1992) citing *McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984). Accordingly, the courts have held that a defendant's assertion of the right to proceed *pro se* must be unequivocal. *Cain*, 972 F.2d 748; *Hodge v. Henderson*, 761 F.Supp. 993, 1001–03 (S.D.N.Y.1990), aff'd 929 F.2d 61 (2d Cir.1991).

■ Under New York law, a criminal defendant may defend pro se provided: "(1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues." *People v. McIntyre*, 36 N.Y.2d 10, 364 N.Y.S.2d 837, 844, 324 N.E.2d 322, 329 (1974).

■ The Second Circuit has held that "violation of a defendant's right to proceed *pro se* requires automatic reversal of a criminal conviction." *Johnstone v. Kelly*, 808 F.2d 214,

218 (2d Cir.1986). The Court noted that the only criteria which the trial court should have considered were whether the defendant was competent to stand trial, and whether he clearly sought to represent himself after being duly warned of the risks of doing so. *Id.* at 216. Defendant's competency to stand trial was never questioned. Thus, the correct inquiry here must be whether petitioner's waiver of his right to counsel was knowing and intelligent, *U.S. v. Purnett,* 910 F.2d 51, 55 (2d Cir.1990), and whether it was unequivocally asserted. Petitioner's positions seem contradictory. It is true that Justice Kennedy's questioning of him appeared to be quite brusque, and the petitioner had difficulty in explaining his position. Transcript, June 3, 1983, pp. 2–5. On the other hand, the transcript indicates that petitioner wanted to proceed on two grounds from the very beginning. He wanted permission to proceed *pro se* and also requested new defense counsel. *Id.,* pp. 5, 7, Transcript, June 6, 1983, pp. 3, 21–22. He did not inform the judges why he wanted to change counsel. *Id.* Petitioner's letters to Justice Kennedy are equivocal. They both seek change of counsel and request permission to proceed *pro se.*

During his colloquy with Justice Kennedy, petitioner sought and received permission to confer with his assigned defense counsel on several occasions before responding to the judge's questions. Transcript June 3, 1983, pp. 3–6. After a break to allow petitioner to consult his attorney, he returned and talked about changing counsel, *Id.,* p. 4; but little was said about proceeding *pro se.* Respondent argues that this constitutes a waiver. Petitioner argues that he was denied his right to counsel of his choice under the Sixth Amendment.

Neither Justice Kennedy nor Justice Celli ever made an explicit ruling on the question of whether petitioner's request to proceed *pro se* was clear, unequivocal and timely. In this case there is support for the judges' approach, because petitioner himself said that he did not have the ability to match the District Attorney and repeatedly requested new counsel.

The petitioner's argument that he was denied the right to proceed *pro se* is also defeated to a certain extent by the proceedings before Justice Celli on June 6, when the only issue petitioner discussed was his request to change counsel. Again, he gave no reason. Perhaps Justice Celli should have asked petitioner why he wanted to change lawyers, but he did not.

Magistrate Judge Foschio's comments upon the way Justice Kennedy handled the hearing on June 3 are justified. Clearly, the judge cut both defense counsel and defendant off in a number of places. It would have been better if the judge had taken a more deliberate approach, but whether his preemptory disposition of the matter was a violation of defendant's constitutional rights under the circumstances is the question. It appears that Justice Kennedy never made a finding as to whether or not there was a waiver of the right to self-representation; but because of the ambiguity of petitioner's statements in court and his letters, in which he seemed to equivocate between demanding the right to proceed *pro se* and requesting a change of counsel, it was difficult to determine exactly what petitioner wanted to do.

The key questions to answer in evaluating Grippo's Sixth Amendment claim are whether Grippo had intended to exercise his Sixth Amendment right to proceed *pro se* and, if so, whether he subsequently waived that right. Respondent has argued that Grippo's real desire was to obtain a new defense lawyer, and that he never truly intended or desired to represent himself. Respondent further argues that even if Grippo did unequivocally assert his right to proceed *pro se,* he subsequently waived that right by failing to persist in asserting it and by consulting his attorney when asked what he wanted to do.

Petitioner, of course, argues that Grippo understood it would have been futile to press his request to proceed *pro se* in the face of Justice Kennedy's clear opposition to the idea.

The Court has carefully reviewed the relevant portions of the transcript, which are attached as an appendix to this opinion, and concludes that petitioner's request to proceed

*pro se* was neither clear nor unequivocal. It appears from the record that petitioner's real desire was to obtain different counsel.

The Appellate Division held: "Contrary to defendant's claim, he was not denied his constitutional right to proceed pro se. The record shows that after questioning by the court, defendant abandoned his request to proceed pro se and, instead, requested the assignment of new counsel." *People v. Grippo,* 124 A.D.2d 985, 508 N.Y.S.2d 803 (4th Dept.1986). Reviewing a similar set of facts, the Court of Appeals for the Seventh Circuit held:

> "Waiver" in criminal law is a fact-specific concept, to which the presumption of correctness in 28 U.S.C. § 2254(d) applies. And s 2254(d) is no less applicable to findings by appellate courts than to findings by trial courts. Collateral review is not a *repechage* [1] round in which the loser in one system of courts starts from scratch in another.

*Cain,* 972 F.2d at 749–50 (citations omitted). Where petitioner stood moot after the trial court's denial of his motion and did not raise the subject at trial, the Court held, "He had plenty of time to protest but did not, which usually means surrender." *Id.* Here, after the exchanges quoted in the Appendix, petitioner never again renewed his request to proceed *pro se.* Although he made clear his dissatisfaction with his public defender, his demand was primarily for a new lawyer, and he ultimately participated in the trial of his case.

Based on the transcript of the proceedings in the trial court, I find that petitioner did not clearly and unequivocally assert a desire to defend himself and accordingly, deny the petition. I hereby adopt the balance of the Magistrate Judge Foschio's report and recommendation.

Because I have not affirmed the magistrate judge's recommendation granting the petition, I will grant the application for a certificate of probable cause. If the petitioner appeals, he may appeal as a poor person.

So ordered.

## APPENDIX

## SELECTED EXCERPTS FROM PRETRIAL TRANSCRIPTS

### *GRIPPO V. HENDERSON & RELIN,* 88–1087C

**May 25, 1983**

**Hon. Robert P. Kennedy presiding**

page 2–8

Mr. Rowe: Ronald J. Grippo

The Court: Mr. Grippo refused to leave his cell?

Deputy Sheriff: Yes, sir.

The Court: In the letter that I sent to you, Mr. O'Brien, a copy of which was sent to Ronald Grippo dated May 16, I said in the letter, "If the Defendant elects to remain in his cell as he says he will do in his letter, I will not go into the matter any further." That being the case I will not consider his application for new counsel.

Mr. O'Brien: Very well. Your Honor.

The Court: This matter will stay on the calendar where it is.

**June 3, 1983**

**Hon. Robert P. Kennedy presiding**

pages 2–8

Mr. Rowe: Ronald J. Grippo. Mr. Grippo, you appear this morning with your attorney Mr. O'Brien?

The Defendant: Yes, I do.

The Court: All right. Mr. Grippo, I brought over this morning in response to your letter of May, well, it isn't dated, sworn to on May 25th. You say you want to represent yourself?

The Defendant: Yes sir.

The Court: How old are you, sir?

The Defendant: 44, sir.

---

1. "Repechage:" second chance, supplementary examination for a candidate that has previously failed; a second chance trial heat (as in olympic rowing) in which losers in the first round of competition are given another chance to qualify for the semi-finals. Webster's Third New International Dictionary (Unabridged).

The Court: How far did you go in school?

The Defendant: Sixth grade, sir.

The Court: How much experience have you had in the courtroom? Even been on trial before?

The Defendant: No, sir.

The Court: Ever been in a criminal proceeding before?

The Defendant: No, sir.

The Court: Well, you state in your application here among other things when you ask to change lawyers, and I set a date for you to come in and be heard on that and you refused to leave your cell and you explained that in this letter by saying, "My apologies for not attending your hearing on May 22nd. I did not do this in no way to mean it like you had put it.: You said, "I had my chance. I am in no way a match for a lawyer and to be brought together in court only tells me that I would have been made a mockery of and you would have had to develop my case. Also, I don't think this would have been fair." That indicates that you are in no position to try your own case. A judge can't help you develop your case. He can't try your case anymore than he can try the Prosecution's case. You say you are no match for the lawyer in here just on a motion. How are you going to match the District Attorney on a trial in front of a jury? Can you answer that, sir?

The Defendant: May I speak to Mr. O'Brien?

The Court: Sure. Let me tell you, Mr. Grippo, your case is scheduled for trial. Now what do you want to do here, sir?

The Defendant: Would it be all right if I talked to him?

The Court: Yes. The record should indicate he is having a conference with his attorney.

Mr. O'Brien: Well, interrupting for a moment, Your Honor, I would like to put something on the record, if I may.

The Court: No. I want to dispose of this matter. Mr. Grippo?

Mr. O'Brien: I think he has lost track of the question, Your Honor.

The Court: What does he want to do?

Mr. O'Brien: I don't know, Judge.

The Court: I don't know either. It's going to go to trial Monday one way or the other. Do you want to keep going with your lawyer?

The Defendant: I would like to change Counsel.

The Court: No, I am not going to change your Counsel. You have given me no reason to. I am not going to change lawyers at this late date. Do you want to go ahead with Mr. O'Brien? I don't know whether your objection is to him. You haven't stated a valid one to me yet. He isn't supposed to supply you with all of the things you have listed that you claim he didn't supply you with. That isn't a lawyer's duty to give you that stuff. He is supposed to be the law person and not you or some guy over in the jail. If you think so highly on those guys over in jail, consider the fact that if they were such good lawyers they wouldn't be in jail with you. How do you want to proceed here, Mr. Grippo? I strongly suggest that you keep Mr. O'Brien to try your case for you because you obviously aren't competent to do it. Show the delay in response and he keeps counseling with Mr. O'Brien. Now, please, Mr. Grippo, what do you want to do?

Mr. O'Brien: Your Honor, He keeps referring to a letter where I wrote him where I indicated to him that I would move to withdraw.

The Court: I am not going to allow you to withdraw at this time.

Mr. O'Brien: I understand that, but I would like to put something on the record with regard to that line.

The Court: This record is certainly great. Everybody wants to put something on the record. Go ahead. I am not going to allow you to withdraw on the eve of trial.

Mr. O'Brien: I understand that, Your Honor, but if I could just make a record and

then you could deny it after I have spoken; I would appreciate that.

The Court: Go ahead. The whole courtroom is waiting for you.

Mr. O'Brien: There has been an inability to communicate with him. He has refused to see me. I cannot be effective in representing him. If I cannot speak to him I cannot advise him, for instance, whether to testify in his own behalf and also without communicating with him I cannot effectively cross-examine witnesses.

The Court: I understand all that and I am not going to let him force a change of lawyers. He has a right to have Counsel assigned. He has had Counsel assigned right from the onset. He wants to change now. I am not going to let him force a change of lawyers be (*sic*) refusing to communicate. Now, the next lawyer if I gave him one if he didn't like him he wouldn't talk to him and so on we go. I am not going to allow you to withdraw on the eve of trial. If Mr. Grippo doesn't want to talk to you, that is certainly going to aid the Prosecution in convicting him. If he makes it impossible for you to prepare a defense for him, that is his grave. Now, Mr. Grippo, what are you going to do here? And I want to hear an answer.

The Defendant: I have nothing to say, Your Honor.

The Court: All right. Application to proceed *pro se* is denied.

Mr. O'Brien: For the record, I would like to ask Mr. Grippo in open court, up to this point he has not seen fit to see me and my understanding—

The Court: Well, sir, I cannot force him to see you.

Mr. O'Brien: I know that, Your Honor. I want to know right now if Mr. Grippo—

The Court: You present yourself at the jail, Mr. O'Brien.

Mr. O'Brien: Every day?

The Court: When you ordinarily would in preparing for a trial which is to begin Monday. If he refuses to see you, so be it. That is to his disadvantage. Again, Mr. Grippo, I strongly suggest that you talk to your lawyer and help him prepare your case. All right. Motions to proceed pro se is denied.

**June 6, 1983**

**Hon. Andrew G. Celli, presiding**

**pages 3–5**

Mr. O'Brien: The first matter I would like to place on the record, Judge, is to renew a motion to withdraw as counsel for the defendant. I don't know if the judge is familiar with any of the history of this case. Approximately three weeks ago the defendant wrote a letter to Justice Kennedy asking for assigned counsel. Justice Kennedy placed it on the calendar for May 23rd and Mr. Grippo failed to appear. Mr. Grippo again wrote a letter to Justice Kennedy to either go pro se and have counsel assigned and have me discharged as counsel. That was put on for June 3rd I believe, and that was also denied. I made a motion at that time as counsel because of the defendant's failure to communicate and cooperate with counsel to provide an effective defense to withdraw as counsel. Now, at that June 3rd appearance before Justice Kennedy he instructed me after he denied Mr. Grippo's motion to go pro se and have assigned counsel, on my motion to withdraw he denied that and instructed me to see Mr. Grippo again. I did so Friday and had a brief conversation with him ending with the defendant leaving the interview room after a fairly brief conversation. The basis of my motion would be as it was in front of Justice Kennedy. The only new event would be an attempt to speak to him at the jail. The basis of that motion would be that the defendant as of late has refused to communicate at all with me, but before that even failure to communicate and cooperate which I thought was necessary for an effective defense. So, that would be my motion to withdraw. That would be the first matter I bring to the Court's attention.

The Court: Any comments, Mr. Rowe?

Mr. Rowe: That that be denied. There is nothing new in that application that Justice Kennedy didn't have before him when he ruled. If there is anything with regard to that, we have a blatant attempt in my opinion to form chop (*sic*) here. The application at this time must be denied having been taken up as late as last week on that very basis.

The Court: Thank you very much. I have heard your motion. A determination has been made by Mr. Justice Kennedy of the Supreme Court in this matter. He reviewed it on two occasions. My understanding, Mr. O'Brien, is that you have represented this gentleman since the outset, and for the record you certainly are a competent defense counsel being a member of the Public Defender's staff and highly experienced in the field. The defendant is not entitled to select attorneys. He is entitled to an attorney if he is without funds, and from the Public Defender's Office he has an excellent one in my opinion. You will continue, sir.

**June 6, 1983**

**Hon. Andrew G. Celli, presiding**

**pages 20–27**

The Court: Sit down, Mr. O'Brien. Your client wants to talk to you a couple minutes.

(There was a pause in the proceeding.)

Did you get a chance to talk to your lawyer, Mr. Grippo? Have you had a chance to talk to your lawyer?

The Defendant: Yes.

Mr. O'Brien: Your Honor, these are in the nature of motions to discharge me as counsel. I would like these put in the record.

The Court: Read them into the record. You want to place them in the record?

Mr. O'Brien: I am certainly not going to read them in the record. If Mr. Grippo wants to read them—

The Court: If he wants to read them, go ahead.

The Defendant: Your Honor, due respect to the law and justice and everyone here present, at this time I would like to bring to the Court's attention once again that because of misrepresentation and breach of trust I am asking for another lawyer to represent the defendant myself in this case at bar. I will bring to the Court case law that is applicable to the defendant in the case at bar, *People v. Romaselli.* The trial court should not allow counsel assigned to representing the defendant after it became obvious that there is no client-attorney relationship. Your honor, in order not to make justice a mockery I am requesting new counsel. With respect to law and justice and my constitutional rights I make this plea.

The Court: Your plea is respectfully denied. The matter has been determined not only by this Court but by another judge before me. You have competent counsel and the matter has been determined. I will grant you an exception to my ruling, too, if I have erred. I wish the record to indicate that this motion has been already determined by Judge Kennedy. Anything else, sir?

The Defendant: No.

The Court: Fine. We will start at quarter to 2.

\*      \*      \*      \*      \*      \*

(The Court reconvened at 2:40 p.m., defendant present and by counsel.)

The Court: We now are involved in the matter of the People of the State of New York against Ronald J. Grippo. The People are represented here by Mr. Douglas Rowe, Assistant District Attorney of the County of Monroe. Mr. Stephen O'Brien an Assistant Public Defender is representing the defendant Ronald J. Grippo.

Mr. Grippo, I would like the record to indicate that I have received from you through the transport officer a letter, and he indicated to me that you did not wish to be present at this trial. Let me say this to you. It is to your benefit, sir, to be present at all stages of the proceedings and to cooperate and assist

your attorney so that the end result will be to your benefit. The matter which you have pointed out in your letter we have decided already. If I were in your position I would stay and remain at the trial to see that the matter proceeded in accordance with the law and to cooperate with the attorney. However, if it is your wish to remove yourself and be absent during the trial of your own case, that of course will be your option. I asked the deputies to bring you here so I could address you personally. Do you understand me, sir?

The Defendant: Yes.

The Court: What is your wish? Do you wish to sit here and get the case started?

The Defendant: I would like to go back, your Honor.

The Court: You do not want to remain?

The Defendant: No.

The Court: It is your wish, then, to absent yourself during the trial of your case, is that right, sir?

The Defendant: (No response)

The Court: Let's stand up, sir. May I hear your answer?

The Defendant: Yes, sir.

The Court: Any comments, gentlemen?

Mr. O'Brien: I have comments. First of all, I would like the defendant admonished that by not appearing he is waiving his right to confront witnesses, and that he would be further admonished that he may be waiving his right to testify on his own behalf.

The Court: Mr. Grippo, let me admonish you as has been very well put here, when you are not present at the trial you are waiving the right, giving up the right to confront anyone who may testify in this trial. You are also waiving your right to testify should you desire to testify. You need not testify under law. There is no requirement. But when you are not here, you waive that right to testify should you desire. But most importantly you waive your right to confront any witness that may testify at the trial. Do you understand that?

The Defendant: Yes, sir.

The Court: You do understand it. Anything further?

Mr. O'Brien: Judge, further, I would like the defendant to be advised or rather I would like to advise this Court that obviously my conduct, my representation is going to be a question in this case or in the future without a defendant here to confer with during the trial, that my ability to represent him effectively will certainly be impaired by my inability to ask Mr. Grippo questions concerning the various testimony the witnesses. I would like him to realize that without him here, again, his failure to cooperate with me will hinder me representing him effectively.

The Court: Do you understand what the lawyer has just told me, Mr. Grippo?

The Defendant: (No response)

The Court: Your answer?

The Defendant: Yes, sir.

The Court: Mr. Rowe, do you have any comment?

Mr. Rowe: Your Honor, I would ask that we proceed. The Court has now apprised Mr. Grippo both this morning and now this afternoon that we are going to move this indictment inspite of the dilatory tactics being set forth by him. Mr. O'Brien has the opportunity to proceed with a defense including cross examination of any witnesses that the People call here. And if Mr. Grippo so chooses to absent himself, so be it. But I ask that we go ahead.

The pretrial matters, including jury selection, continued without defendant present (Tr. pp 27–56). On June 13, 1983, at the beginning of trial, defendant appeared, and he was present for the duration of the trial.