People v Trammell (2020 NY Slip Op 02190)





People v Trammell


2020 NY Slip Op 02190


Decided on April 2, 2020


Appellate Division, First Department


Manzanet-Daniels, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 2, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels, J.P.
Barbara R. Kapnick
Ellen Gesmer
Jeffrey K. Oing, JJ.


2796/08 1474/08 11146 

[*1]The People of the State of New York, Respondent,
v
Reginald Trammell, Defendant-Appellant.



Defendant appeals from a judgment, Supreme Court, New York
County (Ruth Pickholz and Richard D. Carruthers, JJ. at self-representation requests, Carruthers, J. at motions, jury trial and sentencing), rendered February 17, 2011, as amended February 24 and March 3, 2011, convicting defendant of three counts of robbery in the first degree and two counts of robbery in the third degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 50 years to life.




Janet E. Sabel, The Legal Aid Society, New York (Andrew C. Fine and Frances A. Gallagher of counsel), for appellant.
Reginald Trammell, appellant pro se.
Cyrus R. Vance, Jr., District Attorney, New York (Alice Wiseman and Susan Gliner of counsel), for respondent.



MANZANET-DANIELS, J.P.,


The denial of defendant's repeated requests to proceed pro se deprived defendant of his right to represent himself and requires reversal of his conviction.
The right of self-representation is a fundamental right guaranteed both by the Sixth Amendment and article 1, § 6 of the New York State Constitution, and "forcing a lawyer" on a defendant is contrary to this basic right (People v Lewis, 114 AD3d 402, 403 [1st Dept 2014] [internal quotation marks omitted]). When a defendant desires to exercise the right to represent [*2]himself, "the court's only function is to ensure that the defendant is acting knowingly and voluntarily, that is, that the defendant is aware of the disadvantages and risks of waiving his right to counsel" (People v Schoolfield, 196 AD2d 111, 115 [1st Dept 1994], lv denied 83 NY2d 915 [1994]). If the waiver is knowing and voluntary, the request must be granted (id.). That a defendant may be better represented by counsel is immaterial (see Schoolfield, 196 AD2d at 115-116). "[R]espect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires and if he makes the choice with eyes open" (id. [internal quotation marks omitted]). "[R]epeated judicial entreaties" that a defendant continue with assigned counsel or observations that the defendant's interests would be better served through a lawyer's representation do not meet the standard (see People v Smith, 92 NY2d 516, 521 [1998]).
If a court believes that the motion to proceed pro se is an attempt to "subvert the overall purpose of the trial," the proper procedure is to conduct a "dispassionate inquiry" to determine whether the request is in good faith or the intention is to undermine, upset, or unreasonably delay the trial (People v McIntyre, 36 NY2d 10, 18, 19 [1974] [erroneous to rely on post-ruling "outburst" to justify an erroneous denial of the right to represent oneself]; People v Smith, 68 NY2d 737 [1986] [reversing conviction where the court summarily rejected the defendant's request to proceed pro se and forced assigned counsel to participate under threat of contempt, despite defendant's objections], cert. denied 479 US 953 [1986]).
On August 6, 2008, after the second indictment had been returned, defendant asserted that his appointed lawyer was not communicating with him and not "representing [his] interest."
On August 20, 2008, defendant announced that he would "like to assert [his] right to proceed pro se," explaining that his subsequently-appointed attorney, Mr. Wolfe, was not representing his interests. Justice Pickholz acknowledged that defendant had that right, but warned that it was "very difficult . . . to represent yourself," especially without a legal background. Defendant proceeded to complain that his lawyer was not visiting him. The court stated that it "c[ouldn]'t stop" defendant from representing himself, but stated that it was "a very dangerous thing, very dangerous to represent yourself," and urged defendant to try to work with his lawyer. The court stated that if defendant found himself unable to work with his lawyer, "then you can represent yourself obviously." Defendant noted that he had written out his own book on criminal procedure while in prison. The court told defendant that it would keep Mr. Wolfe on the case, but that if defendant continued to want to represent himself, he would have that right.
Although the court stated that it would not prevent defendant from representing himself, it did just that — stating, over defendant's protests, that it was keeping the lawyer on the case and ignoring defendant's unequivocal assertion of his right to self-representation.
This denial was error, as the court's only function at this juncture was to ensure that defendant understood the implications of his decision and that his waiver was knowingly and intelligently made. The court failed to undertake the relevant inquiry and instead foisted Mr. Wolfe upon defendant.
This denial was not without consequence, as counsel appears never to have filed the relevant motion pertaining to the second indictment, and neither he nor subsequent counsel asked for a Dunaway hearing with respect to the second indictment.
On October 29, 2008, following an off-the-record conversation initiated by defense counsel, Justice Carruthers ordered a CPL article 730 examination. Defendant asked to be heard, and stated that he wanted to assert his right to appear pro se. He stated that he was "tired of coming back and forth to court with a lawyer unprepared to defend" him. The court acknowledged the validity of the point and stated they would take it up after the report of the exam had been issued. The case was adjourned several times pending issuance of the report.
On January 7, 2009, defendant noted that he had asserted his right to proceed pro se "four [*3]appearances ago," well before the 730 exam had been ordered. He noted that assigned counsel had been "forced" on him. The court deferred discussion until after the 730 report had been rendered.
On January 14, 2009, a report was issued finding defendant fit to proceed.
On February 3, 2009, the parties agreed to confirm the findings of the report. Justice Carruthers confirmed the report, stating that based on the report and his interaction with defendant, it was clear to him that defendant was "well aware of the procedures that we follow here. He is well aware of his rights." He noted that defendant had indicated on previous occasions that he wished to represent himself, but stated that he did not "think [defendant was] still of that mind." Defendant replied, "Yes, I said three months ago before the Court decided to reject my request to represent myself and forced me to continue to be represented by this attorney... If it meant me proceeding pro se, yes."
When defendant complained about Mr. Wolfe's representation, cursing and stating that he "[did]n't want to be represented by this piece of shit, period," the Judge stated, "I'll have an attorney for you when [you're] calmer," and the case was adjourned.
This, too, was error: If defendant was competent to stand trial, he was competent to waive counsel. His threats against counsel cannot be construed as an attempt to delay or disrupt the trial, as he had been making similar requests to represent himself for months, long before the episode occurred.
On the following day, February 4, 2009, a new attorney, Mr. Konoski, entered an appearance on behalf of defendant. Mr. Konoski acknowledged during a subsequent appearance that defendant "seem[ed] to understand everything that's going on," and had been "easy enough" to work with. The parties agreed to confirm the 730 report.
On April 8, 2009, defendant stated for the record that he was "angered about the way this proceeding is going on," noting that he had made requests to represent himself for the "last 6 months,"[FN1] but that when he did so, his lawyer requested a 730 exam. Defendant complained that Mr. Konoski was taking too long to file the motion in opposition to consolidation and opined that he could "do better by representing" himself. He asked for the relevant paperwork so he could begin drafting the motion and stated, "From this stage on I would like to represent myself. I ask that you relieve this attorney." The court stated that it would "think" about it, notwithstanding that by this time defendant had already been found competent to stand trial, and instead foisted a lawyer upon him.
On May 6, 2009, defendant asked for Mr. Konoski to be removed and reiterated that he wanted to represent himself. When defendant became insistent, stating, "I want to represent myself pro se. He is not going to represent me. Now I'm going to hawk and spit in his motherfucking face," the court did not pass upon the request but instead ordered another 730 examination.
On July 8, 2009, a new attorney, Mr. Katz, appeared for defendant. On August 26, 2009, the parties appeared before Justice Marcy Kahn, who received the report and found defendant fit to proceed.
On November 4, 2009, defendant reported that his new lawyer, Mr. Katz, had filed papers without defendant's input, even though the court had previously assured him that he would be able to review the papers before they were filed. Defendant said he wanted to "state in the record for more than a year I have been attempting to assert my right to proceed [pro] se. Every time I do that I am put in for a 730 evaluation and reassigned another attorney. The Court record will [*4]bear out this happened three times. I attempted to assert my rights for more than a year. Every time the Court has put me in for a 730 and reassigned me counsel as though the basis of my argument was really a request for reassignment of counsel." Justice Carruthers explained that he hadn't ordered 730 exams because defendant wanted to represent himself, but because defendant appeared to have a "mental issue" that would make it difficult for him to represent himself. (This, despite the fact that defendant had already been found fit to stand trial).
Defendant ventured that "[i]f you would allow me to proceed [pro] se as I have been attempting to do I am sure I would have been able to do more extensive-," whereupon the Judge interjected, allowing that defendant could represent himself, and that Mr. Katz would remain as adviser. Defendant replied that he wanted Mr. Katz removed and did not want him as an advisor, but the court ignored him.
On December 16, 2009, defendant complained that the omnibus motion Mr. Katz had filed "consisted of facts and law from another individual['s] case." Mr. Katz acknowledged that defendant was correct and asked that the motion be "amended to indicate the proper charges." Defendant stated, "You will allow me, you say, to represent myself."
The court acknowledged that defendant was found "fit to proceed." The court asked defendant if he wished to go forward; defendant replied that he did, but requested the case file in order to prepare motions. Defendant stated that he was "disappointed" with counsel, and the court granted defendant's request for a new lawyer to substitute for Mr. Katz. The court appointed Mr. Weinstein and gave him an extension to file defendant's "new motions."
On April 7, 2010, defendant again raised the fact that Mr. Katz had filed a "defective" omnibus motion raising arguments concerning someone else's case, and he complained that Mr. Weinstein, although he said he was ready to proceed to trial, had not "resubmitted the motion." He handed the court an omnibus motion that he had drafted himself. Defendant asked, "[D]o I have a right to counsel who is going to effectively represent me or somebody just trying to eat up 18-B fees?" The court urged defendant to have more "confidence" in his attorney, and the case was adjourned.
On September 16, 2010, the parties appeared for a suppression hearing. Defendant disagreed with counsel's strategy and asserted that he no longer had "confidence" in Mr. Weinstein. On September 20, 2016, at the continued hearing, defendant reiterated that he lacked confidence in Mr. Weinstein and threatened violence against him. Mr. Weinstein asked to be removed. Counsel stated that he was "at a bit of a loss in terms of how to proceed" since defendant was "unresponsive" to what he was saying, and requested a CPL 730 examination.
Both examiners found defendant fit to proceed, and on December 6, 2010, the report was confirmed. Defendant asserted that he wanted to proceed pro se and requested that he be provided with the relevant documentation. When Justice Carruthers stated that they would "have to talk about that some more," defendant replied, "I have asserted my right to proceed pro se, the last 18 to 24 months. Every time I bring this up to the Court you say we'll have to talk about it." The court noted the need for "further minutes on the hearing," and adjourned the case to conclude the hearing and schedule a trial date. Defendant interjected, "I have a right to represent myself."
On December 16, 2010, as soon as appearances had been entered, defendant began complaining that his attorney had failed to consult with him. The court acknowledged that defendant had been found fit to proceed; nonetheless, the court concluded that defendant's behavior was "purposeful" and intended to "disrupt the court and the proceedings." Defendant protested that it was not "fair for [the court] to force a lawyer on [him] and then say [he] shouldn't rebel." Defendant insisted that he did not want Mr. Weinstein to represent him and that he wanted to "go pro se." The judge told defendant that Mr. Weinstein would not be relieved, and directed that the suppression hearing continue. The court stated that it was evident [*5]that defendant's intention was to "disrupt" the proceeding and that he had "forfeited" his right to be present.
Mr. Weinstein and another lawyer, Mr. Heinzmann, represented defendant at trial, with the latter conducting cross-examinations and delivering the summation.
Defendant's repeated and insistent requests to proceed pro se were erroneously denied. His initial requests were denied summarily, without the requisite inquiry to ensure that the waiver was knowingly and intelligently made.
While giving lip service to defendant's right to represent himself, the court nonetheless foisted counsel on defendant over defendant's vigorous protests. As Schoolfield counsels, a court may not foist an attorney on defendant simply because it feels a defendant is better served by assigned counsel (196 AD2d at 115). Defendant was entitled to proceed "under his own banner" (id.); that he might be better served by counsel is immaterial.
If the court believed that defendant was trying to subvert the trial, it was obliged to conduct the "dispassionate inquiry" required by McIntyre to ascertain whether defendant's requests were calculated to delay and disrupt or were a good faith attempt to exercise his constitutional right to represent himself.
Instead of conducting the requisite inquiry, the court ordered 730 examinations and assigned successive defense counsel, notwithstanding defendant's legitimate complaints about counsel's deficiencies. It was acknowledged that counsel filed an incorrect motion on defendant's behalf and that a corrected motion was never filed, belying the notion that defendant's request was calculated to disrupt.
The court's belated finding, on December 16, 2010, that defendant intended to "disrupt" the proceedings cannot be used as post-hoc justification of its earlier denials of repeated requests to proceed pro se. Defendant's requests to proceed pro se were denied throughout 2008, 2009, and much of 2010, without mention of "disruption" as a basis.
It was hardly surprising that defendant expressed increasing frustration with the process, given that he had repeatedly been found fit to proceed, and yet the court continued to deny his requests to proceed pro se and to ignore his complaints regarding counsel. As the Court of Appeals has observed, in finding a defendant's "outburst" insufficient to trump his right to self-representation,
"Just as the court may not rely on a postruling outburst to validate an erroneous denial, the court may not goad the defendant to disruptive behavior by conducting its inquiry in an abusive manner calculated to belittle a legitimate application. An outburst thus provoked will not justify the forfeiture of the right to self-representation" (McIntyre, 36 NY2d at 19).
That defendant on occasion agreed to the appointment of new lawyers does not render his requests to proceed pro se equivocal (see Lewis, 114 AD3d at 404 [request to proceed pro se not equivocal merely because it is made in the alternative]). A defendant who elects to proceed pro se "is frequently motivated by dissatisfaction with trial strategy or a lack of confidence in counsel" (id.).
An erroneous denial of the right to defend onself is not subject to a harmless error analysis. We are therefore obliged to reverse the conviction and remand for a new trial.
The verdict challenged on appeal was based on legally sufficient evidence and was not against the weight of the evidence. Defendant's arguments concerning suppression or preclusion of identification testimony are unpreserved and unavailing. Because we are ordering a new trial, we declined to reach any other issues.
Accordingly, the judgment of the Supreme Court, New York County (Ruth Pickholz and Richard D. Carruthers, JJ. at self-representation requests, Carruthers, J. at motions, jury trial and sentencing), rendered February 17, 2011, as amended February 24 and March 3, 2011, convicting [*6]defendant of three counts of robbery in the first degree and two counts of robbery in the third degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 50 years to life, should be reversed, and the matter remanded for a new trial.
All concur.
Judgment, Supreme Court, New York County (Ruth Pickholz and Richard D. Carruthers, JJ. at self-representation requests, Carruthers, J. at motions, jury trial and sentencing), rendered
February 17, 2011, as amended February 24 and March 3, 2011, reversed, and the matter remanded for a new trial.
Opinion by Manzanet-Daniels, J. All concur.
Manzanet-Daniels, J.P., Kapnick, Gesmer, Oing, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 2, 2020
CLERK



Footnotes

Footnote 1:At this point, defendant had actually been making such requests for eight months.