[988 NYS2d 190]

In the Matter of STATE OF NEW YORK, Respondent, v RAUL L., Appellant.

Second Department, June 4, 2014

**APPEARANCES OF COUNSEL**

*Steven A. Feldman*, Uniondale (*Arza Feldman* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, New York City (*Steven C. Wu* and *Won S. Shin* of counsel), for respondent.

**OPINION OF THE COURT**

LEVENTHAL, J.

In this proceeding pursuant to Mental Hygiene Law article 10

for the civil management of the appellant, a sex offender allegedly requiring civil management, the primary issue before this Court is whether the Supreme Court properly granted the appellant's request to give up his statutory right to counsel and conduct his defense pro se. For the reasons discussed below, we hold that due process requires that a sex offender's waiver of the statutory right to counsel in a Mental Hygiene Law article 10 proceeding be unequivocal, voluntary, and intelligent. To ensure that the waiver meets this standard, where a sex offender makes a request to proceed pro se, the court must conduct a searching inquiry to ascertain that the sex offender is aware of the dangers and disadvantages of giving up the right to counsel, such as must be conducted when a criminal defendant seeks to waive that fundamental right. Since the Supreme Court failed to conduct such an inquiry, the appellant's waiver of his right to counsel was ineffective, and the Supreme Court erred in permitting him to proceed pro se.

In 2005, the appellant was convicted of sodomy in the first degree pursuant to former Penal Law § 130.50, assault in the first degree (two counts), and assault in the second degree, upon a jury verdict, and sentenced to prison. The conviction related to acts committed in 2003, when, at 15 years of age, the appellant entered a woman's home, struck her in the head with a baseball bat, and engaged in anal sexual contact with her while she was unconscious.

In March 2011, as the appellant neared release from prison, the State of New York commenced this proceeding pursuant to Mental Hygiene Law article 10, also known as the Sex Offender Management and Treatment Act (hereinafter SOMTA), for the civil management of the appellant (see Mental Hygiene Law § 10.06 [a]). In an ensuing probable cause hearing, the Supreme Court concluded that there was probable cause to believe that the appellant was a sex offender requiring civil management and directed that he be detained at a secure treatment facility pending trial (see Mental Hygiene Law § 10.06 [k]).

On the date that a nonjury trial on the issue of whether the appellant suffered from a mental abnormality as defined in Mental Hygiene Law § 10.03 (i) was scheduled to commence, the appellant's appointed counsel moved for leave to withdraw from the case. Counsel's application was apparently prompted by a disagreement with the appellant about delaying the trial. As revealed by a letter from the appellant, the source of the conflict was the appellant's disagreement with counsel's recom-

mendation that the trial be adjourned; the appellant opposed an adjournment because he did not want to spend additional time in custody. The Supreme Court initially denied counsel's application for leave to withdraw and indicated that it would grant counsel an adjournment to prepare the appellant's psychiatric examiner, Dr. Leonard Bard.

The Supreme Court explained to the appellant that if his appointed counsel were to be relieved, new counsel would need four to five months to be ready for the trial. In response, the appellant stated that he would like to "fight" his own case. The court then indicated that it would relieve appointed counsel and designate him as the appellant's legal consultant. The appellant stated that he wanted to represent himself, was willing to proceed, and was "familiar with the DSM-IV." The Assistant Attorney General representing the State expressed concern that the court had not conducted a broader inquiry about the appellant's ability to handle the case, including an inquiry as to whether the appellant had a sufficient level of intelligence to represent himself. The court answered that its only obligation was to put on the record that the appellant did not want an attorney and that he understood that he would represent himself. The court also noted that the letter that the appellant had written regarding his disagreement with counsel demonstrated that the appellant could read and write. After the Assistant Attorney General stated, for a second time, that a further inquiry was necessary, the court replied that it was satisfied that the appellant was aware of what he was doing and permitted the appellant to proceed pro se.

At the ensuing mental abnormality trial, the State elicited testimony from Dr. Roger Harris, a psychiatrist, who testified as an expert in sexual psychiatry and sex offender evaluation. Dr. Harris diagnosed the appellant with sexual sadism and antisocial personality disorder, with many characteristics of psychopathy. Dr. Harris defined sexual sadism as a diagnosis in which the subject derives sexual arousal from physically injuring, psychologically harming, humiliating, or degrading another individual. He testified that sexual sadism is listed in the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (hereinafter DSM-IV), as one of the paraphilias, a group of diagnoses applicable to "a range of abnormal sexual arousal." Examples of paraphilias given by Dr. Harris included pedophilia, transvestism, and exhibitionism.

Dr. Harris testified that the appellant's underlying conviction supported the diagnosis of sexual sadism because the appellant

struck the victim in the head with a baseball bat, causing the victim to bleed profusely from her head. The appellant then had to manipulate the victim's unconscious body in order to engage in anal sexual conduct with her. Dr. Harris testified that it was remarkable that, in a setting where the victim was unconscious and covered with blood, the appellant was able to become sexually aroused, maintain an erection, and reach orgasm. Dr. Harris opined that the appellant suffered from a mental abnormality as defined in the Mental Hygiene Law which affected his emotional, cognitive, and volitional capacities.

Dr. Paul Etu, a psychologist and psychiatric examiner, diagnosed the appellant with paraphilia not otherwise specified (hereinafter paraphilia NOS), antisocial disorder with traits relating to borderline personality disorder, schizotypal personality disorder, and histrionic personality disorder. Dr. Etu noted that the appellant was very deceitful, impulsive, aggressive, had shown a reckless disregard for others, and failed to show adequate remorse.

The appellant did not present any witnesses at the mental abnormality trial. However, he submitted to the court a report from Dr. Leonard Bard, who opined that, given the lack of information about the underlying offense and the appellant's refusal to acknowledge the sexual aspects of the crime, it was not possible to determine whether the appellant should be diagnosed with sexual sadism. Likewise, Dr. Bard asserted that the appellant could not be diagnosed with paraphilic disorder because the appellant had been incarcerated since the age of 15, and had not displayed any signs of that disorder during that time. Dr. Bard, however, diagnosed the appellant as suffering from borderline personality disorder with both antisocial and paranoid features. Although Dr. Bard acknowledged the possibility that the appellant would violate the conditions of release under strict and intensive supervision and treatment, he maintained that the appellant was nonetheless a candidate for such release.

Following the nonjury mental abnormality trial, the Supreme Court determined that the State had proven, by clear and convincing evidence, that the appellant suffers from a mental abnormality as defined by article 10 of the Mental Hygiene Law and ordered a dispositional hearing.

At the dispositional hearing, Dr. Harris testified that the appellant met the criteria for a dangerous sexual offender requiring confinement. He testified that the three factors that are the

strongest predictors for sexually reoffending are psychopathy, antisocial attitude and behavior, and deviant sexual interests; the appellant displayed all three factors. According to Dr. Harris, antisocial personality attitude and behavior had been shown to increase an individual's risk to sexually reoffend. In addition, the appellant's age increased the risk that he would sexually reoffend, since men in their early 20s were, as a group, at a higher risk.

Dr. Etu opined that the appellant required a much more intense level of treatment than he would get in the community. Dr. Etu explained that in his written report he had given the appellant a "rule out" diagnosis of sexual sadism since he did not have enough information at that time to make a definitive diagnosis of that condition. However, he had received new evidence following the mental abnormality trial, and had now diagnosed the appellant with sexual sadism. The new information included the appellant's assertions that he had worked as a prostitute and participated in bondage and sadomasochism. Dr. Etu testified that the group of sex offenders with the highest rate of recidivism were those with high antisocial behavior with psychopathy, and deviant sexual interests; that group reoffended at a rate of more than 60%. According to Dr. Etu, the appellant fell into the group of sex offenders with the highest rate of recidivism.

Dr. Bard testified for the appellant. According to Dr. Bard, the appellant's personality disorder was severe, had resulted in one specific horrendous act of sexual violence, and the appellant had not been able to alter his basic personality structure since the time of the offense. The diagnosis predisposed the appellant to the commission of sexual offenses, and had resulted in serious difficulty in controlling his impulses in the past. Dr. Bard opined that the appellant needed sex offender treatment and psychiatric treatment, which he could receive in the community under strict and intensive supervision. Dr. Bard did not believe that the appellant was a dangerous sex offender requiring confinement.

After the dispositional hearing, the Supreme Court determined that the appellant was a dangerous sex offender requiring confinement, and directed that he be committed to a secure treatment facility (see Mental Hygiene Law § 10.07 [f]).

On appeal, the appellant contends that the State failed to establish, by clear and convincing evidence, that he was a sex offender suffering from a mental abnormality, and that he was a

dangerous sex offender requiring confinement in a secure facility. He further contends that he was deprived of his statutory right to counsel because the Supreme Court failed to conduct a searching inquiry to ensure that he was aware of the dangers and disadvantages of proceeding pro se.

We begin our analysis by addressing the appellant's challenge to the Supreme Court's determinations that he was a sex offender suffering from a mental abnormality, and that he was a dangerous sex offender requiring confinement in a secure facility. In reviewing a determination made after a nonjury trial or hearing, the power of the Appellate Division is as broad as that of the trial or hearing court, and it may render the judgment that it finds warranted by the facts, taking into account that in a close case the trial or hearing judge had the advantage of seeing and hearing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Matter of State of New York v Robert B.*, 106 AD3d 828 [2013]; *Matter of State of New York v Andrew J.W.*, 85 AD3d 805, 807 [2011]; *Matter of State of New York v Clarence D.*, 82 AD3d 776 [2011]).

A "[m]ental abnormality" is statutorily defined as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]). The State must establish by clear and convincing evidence that the appellant suffers from a mental abnormality (*see* Mental Hygiene Law § 10.07 [d]).

The Supreme Court's determination that the State demonstrated, by clear and convincing evidence, that the appellant suffers from a "mental abnormality" within the meaning of Mental Hygiene Law § 10.03 (i) was warranted by the facts (*see Matter of State of New York v Terry P.*, 109 AD3d 934 [2013]). The statutory definition of mental abnormality does not require any specific psychiatric diagnosis and "utilize[s] phraseology that, while informed by prevailing medical knowledge, is intended to have greater legal, and not medical, significance" (*Matter of State of New York v Shannon S.*, 20 NY3d 99, 106 [2012]).

The State adduced evidence that the appellant was diagnosed with sexual sadism, a mental condition included in the DSM-IV, as explained by Dr. Harris. Moreover, the State adduced evi-

dence that the appellant was diagnosed with, among other things, paraphilia NOS, which "has been found to be a viable predicate mental disorder or defect that comports with minimal due process" (*id.* at 107, citing *Brown v Watters*, 599 F3d 602, 611-612 [7th Cir 2010], and *United States v Carta*, 592 F3d 34, 40-42 [1st Cir 2010]). Generally, the question of whether a diagnosis of paraphilia NOS constitutes a reliable predicate for a finding of mental abnormality presents a factual issue to be resolved at the trial (*see Matter of State of New York v Shannon S.*, 20 NY3d at 107).

Essentially, this case came down to a battle of the experts with respect to whether the appellant suffered from a mental abnormality as defined in Mental Hygiene Law § 10.03 (i). The Supreme Court's determination to credit the testimony of the State's expert witnesses instead of the testimony of the appellant's expert witness is supported by the record, and we find no basis to disturb it (*see Matter of State of New York v R.W.*, 99 AD3d 1010, 1011 [2012]; *Matter of State of New York v Andrew J.W.*, 85 AD3d at 807). "The trier of fact is in the best position to evaluate the weight and credibility of conflicting expert medical and psychiatric testimony" (*Matter of State of New York v Andrew J.W.*, 85 AD3d at 807 [internal quotation marks omitted]; *see Matter of State of New York v Jason H.*, 82 AD3d 778, 780 [2011]; *Matter of State of New York v Donald N.*, 63 AD3d 1391, 1394 [2009]).

■ A "[d]angerous sex offender requiring confinement" is defined under Mental Hygiene Law article 10 as

> "a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]).

The State must establish by clear and convincing evidence that the appellant is a dangerous sex offender requiring confinement (*see* Mental Hygiene Law § 10.07 [f]). Here, clear and convincing evidence supports the Supreme Court's determination that the appellant is a dangerous sex offender requiring civil confinement in a secure facility (*see Matter of State of New York v Robert B.*, 106 AD3d at 828-829; *Matter of State of New York v Alfredo M.*, 96 AD3d 1068, 1069 [2012]; *Matter of State of New York v Jemal M.*, 91 AD3d 961, 962 [2012]).

We now address the appellant's contention that the Supreme Court erred in granting his request to give up his right to counsel and conduct his defense pro se. To resolve this issue, we must determine whether the due process considerations which underpin a sex offender's statutory right to counsel in a SOMTA proceeding obligate the court to conduct the same type of searching inquiry that is required in a criminal proceeding to ensure that the waiver of that right is unequivocal, voluntary, and intelligent. The appellant maintains that the same principles established for criminal proceedings apply to SOMTA proceedings. Consequently, the appellant submits that the Supreme Court violated his right to counsel when, despite repeated requests by the Assistant Attorney General, it granted his application to proceed pro se without first conducting a searching inquiry to ensure that he was aware of the dangers and disadvantages of proceeding pro se. The State responds that the requirement to conduct a searching inquiry applies only in criminal proceedings wherein the constitutional right to counsel is implicated, and not to civil proceedings under SOMTA wherein only a statutory right to counsel is implicated.

A criminal defendant's federal and state constitutional right to counsel includes the right to refuse appointed counsel (*see Faretta v California*, 422 US 806 [1975]; *Matter of Kathleen K. [Steven K.]*, 17 NY3d 380, 384-385 [2011]; *People v McIntyre*, 36 NY2d 10 [1974]; *see also* US Const Amend VI; NY Const, art I, § 6). However, since "[i]mplicit in a defendant's assertion of [the] right to proceed *pro se* is the decision to disavow the constitutional right to counsel" (*People v McIntyre*, 36 NY2d at 17), the court must be satisfied that the defendant's waiver is unequivocal, voluntary, and intelligent before permitting him or her to forgo counsel and proceed pro se (*see Faretta v California*, 422 US at 835; *People v Crampe*, 17 NY3d 469, 481 [2011]; *People v Arroyo*, 98 NY2d 101, 103 [2002]; *People v Smith*, 92 NY2d 516, 520 [1998]; *People v McIntyre*, 36 NY2d at 17).

To ascertain whether a waiver "meets these appropriately rigorous requirements" (*People v Smith*, 92 NY2d at 520), the court is obligated to conduct a "searching inquiry" to ensure that a criminal defendant's waiver is knowing, intelligent, and voluntary (*see People v Slaughter*, 78 NY2d 485, 491 [1991]). A waiver of the right to assigned counsel is voluntarily made when the trial court properly advises the defendant and can be certain that the "dangers and disadvantages of giving up the fundamental right to counsel have been impressed on the defendant" (*id.*

[internal quotation marks omitted]). Although a searching inquiry need not adhere to any rigid formula, litany, or catechism (*see People v Smith*, 92 NY2d at 520), the Court of Appeals has stated that it is better practice to ask a defendant about his or her "age, education, occupation, previous exposure to legal procedures and other relevant factors bearing on a competent, intelligent, voluntary waiver" (*People v Arroyo*, 98 NY2d at 104 [internal quotation marks omitted]). While flexible, the court's record inquiry " 'must accomplish the goals of adequately warning a defendant of the risks inherent in proceeding *pro se*, and apprising a defendant of the singular importance of the lawyer in the adversarial system of adjudication' " (*id.*, quoting *People v Smith*, 92 NY2d at 520; *see People v Crampe*, 17 NY3d at 482).

A SOMTA proceeding is not, however, a criminal prosecution. "[W]hen the state acts through its parens patriae power to confine a sex offender for therapy and treatment, commitment proceedings are civil, not criminal, in nature" (*Matter of State of New York v Floyd Y.*, 22 NY3d 95, 103 [2013]; *see Allen v Illinois*, 478 US 364, 374 [1986]; *Addington v Texas*, 441 US 418, 425 [1979]; *Matter of State of New York v Campany*, 77 AD3d 92, 98 [2010]). Thus, the instant proceeding is civil, rather than criminal, in nature, and the constitutional protections of the Sixth Amendment, which guarantees the right to counsel, do not apply (*see Matter of State of New York v Floyd Y.*, 22 NY3d at 103).

Nevertheless, a sex offender in a SOMTA proceeding has a statutory right to counsel. In this regard, SOMTA provides that the court shall appoint counsel for a respondent where that respondent is financially unable to obtain counsel (*see* Mental Hygiene Law § 10.06 [c], [d]).

Although a statutory rather than a Sixth Amendment right to counsel is involved here, the appellate courts of this state have applied the same principles established to safeguard the right to counsel in criminal cases to a variety of Family Court proceedings. Such proceedings are also civil in nature, but implicate constitutional due process considerations because they frequently involve issues of fundamental import relating to the welfare and custody of children, and can result in adjudications that can bear a permanent and significant stigma, such as a finding of child abuse or neglect (*see Matter of Jung [State Commn. on Jud. Conduct]*, 11 NY3d 365, 372-373 [2008]; *Matter of Nowell M. [Katherine M.]*, 115 AD3d 746 [2014]; *Matter of Eunice D. [James F.D.]*, 111 AD3d 627, 628 [2013]). Family Court

proceedings can also potentially result in incarceration, such as where a parent is found in contempt for willful violation of a child support order (*see Matter of Madison County Support Collection Unit v Feketa*, 112 AD3d 1091 [2013]; *Matter of Bader v Hazzis*, 77 AD3d 742, 744 [2010]). In such proceedings the Family Court has been required to conduct a searching inquiry in order to determine whether an individual has knowingly and voluntarily requested to waive a statutory right to counsel and proceed pro se (*see e.g. Matter of Madison County Support Collection Unit v Feketa*, 112 AD3d 1091 [2013] [Family Ct Act art 4 child support proceeding]; *Matter of Massey v Van Wyen*, 108 AD3d 549 [2013] [Family Ct Act art 6 custody and visitation proceeding]; *Matter of Storelli v Storelli*, 101 AD3d 1787 [2012] [Family Ct Act art 4 proceeding relating to child support]; *Matter of Mia B. [Brandy R.]*, 100 AD3d 569, 570 [2012] [Family Ct Act art 10 child neglect proceeding]; *Matter of Melissa H. v Shameer S.*, 100 AD3d 535 [2012] [Family Ct Act art 8 family offense proceeding]; *Matter of Marvin P.*, 52 AD3d 722 [2008] [proceeding pursuant to CPL 330.20 and a related proceeding pursuant to Mental Hygiene Law art 33]; *cf. Matter of Kathleen K. [Steven K.]*, 17 NY3d at 386 [declining to reach issue of whether a parent in a proceeding to terminate parental rights pursuant to Social Services Law § 384-b "has a *Faretta*-type right of self-representation"]).

The rights at stake in a SOMTA proceeding are no less significant than those involved in the above-cited Family Court cases. Indeed, a respondent in a SOMTA proceeding arguably faces an even more severe threat to his or her liberty than that faced by a criminal defendant. When successfully litigated by the State, such a proceeding can result in civil confinement, after a respondent is released from prison, which is involuntary and indefinite (*see* Mental Hygiene Law § 10.09), and can last the remainder of a respondent's life. Therefore, we hold that a respondent in a SOMTA proceeding can effectively waive his or her statutory right to counsel only after the court conducts a searching inquiry to ensure that the waiver is unequivocal, voluntary, and intelligent.

Applying these principles here, we find that the Supreme Court failed to secure an effective waiver of the appellant's right to counsel. As an initial matter, it is clear from the record that the appellant's waiver of the right to counsel was not unequivocal. The appellant's request to represent himself was made only after his counsel moved to withdraw due to an ap-

parent disagreement with the appellant over whether to seek an adjournment in order to obtain additional time to prepare for trial. The court initially denied counsel's motion to withdraw, stating that it would grant an adjournment for a reasonable time to allow counsel to prepare for cross-examination and directing him to hire another doctor. The appellant did not express any desire to represent himself until after the Supreme Court informed him that if new counsel were to be appointed, the new counsel would need four to five months to prepare. It thus appears that the appellant's primary motivation in seeking to represent himself was his concern that the appointment of new counsel would delay the proceeding and cause him to spend additional time in custody. The court nevertheless engaged in no colloquy to ascertain whether the appellant's request to proceed pro se arose from an unequivocal desire to forgo the assistance of counsel, and invoke the right to self representation.

Moreover, the appellant could not make an intelligent and voluntary choice to waive the assistance of counsel without being apprised, in any manner, of the dangers and disadvantages of self-representation (*see People v Arroyo*, 98 NY2d at 104). Indeed, the fact that the appellant was alleged to be suffering from a mental abnormality requiring confinement to a mental institution made it all the more imperative that the Supreme Court adequately warn him of the risks inherent in proceeding pro se, and impress upon him the disadvantages of going to trial without the assistance of counsel. Notwithstanding the concerns voiced by the Assistant Attorney General, the Supreme Court erroneously insisted that it had fulfilled its obligations by merely placing on the record that the appellant did not want an attorney, that he understood he would represent himself, and that he could read and write.

In *Matter of State of New York v Floyd Y.* (22 NY3d at 103), the Court of Appeals held that while the subject of a SOMTA proceeding has a constitutional right to due process, the "constitutional protections of the Fifth and Sixth Amendments do not apply." Therefore, while the Supreme Court's error deprived the appellant of his statutory right to counsel, it did not constitute a violation of any Sixth Amendment right to counsel. Nevertheless, at the heart of the due process guarantees in the Federal and State Constitutions is the principle that when the State seeks to take life, liberty, or property from an individual, the State must provide effective procedures that guard against an erroneous deprivation (*see Matter of State of*

*New York v Floyd Y.*, 22 NY3d 95 [2013]; *People v David W.*, 95 NY2d 130, 136 [2000]; *see also Mathews v Eldridge*, 424 US 319, 334-335 [1976]). It is clear that the Supreme Court's error deprived the appellant of his statutory right to counsel. That a court must conduct a searching inquiry in order to determine whether a respondent in a SOMTA proceeding intelligently and voluntarily waived the statutory right to counsel is manifest, considering that such proceedings invariably require expert testimony and two separate hearings (*see* Mental Hygiene Law §§ 10.03 [i]; 10.07 [a], [f]). Since the Supreme Court failed to conduct the requisite searching inquiry here, the appellant's waiver of his statutory right to counsel was ineffective.

In light of our determination, we need not address the appellant's remaining contentions.

Accordingly, the order is reversed, on the law, and the matter is remitted to the Supreme Court, Orange County, for further proceedings, including a trial pursuant to Mental Hygiene Law § 10.07. The respondent shall not be released pending the completion of such trial (*see* Mental Hygiene Law § 10.06 [k]).

MASTRO, J.P., BALKIN and LOTT, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements, and the matter is remitted to the Supreme Court, Orange County, for further proceedings, including a trial pursuant to Mental Hygiene Law § 10.07; and it is further,

Ordered that the respondent shall not be released pending the completion of such trial (*see* Mental Hygiene Law § 10.06 [k]).