Matter of State of New York v Kerry K. (2017 NY Slip Op 08671)





Matter of State of New York v Kerry K.


2017 NY Slip Op 08671


Decided on December 13, 2017


Appellate Division, Second Department


Sgroi, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 13, 2017
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
SANDRA L. SGROI
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2015-08387
 (Index No. 6246/13)

[*1]In the Matter of State of New York, respondent,
v
Kerry K. (Anonymous), appellant.



APPEAL by Kerry K., in a proceeding pursuant to Mental Hygiene Law article 10 for the civil management of Kerry K., a sex offender allegedly requiring civil management, from an order of the Supreme Court (Jerry Garguilo, J.), dated June 25, 2015, and entered in Suffolk County, which, upon a finding, made after a nonjury trial, that he suffers from a mental abnormality as defined in Mental Hygiene Law § 10.03(i), and upon a determination, made after a dispositional hearing, that he is a sex offender requiring strict and intensive supervision and treatment, granted the petition and directed that he be subject to a regimen of strict and intensive supervision and treatment.



Mental Hygiene Legal Service, Mineola, NY (Michael D. Neville, Ana Vuk-Pavlovic, and Dennis B. Feld of counsel), for appellant.
Eric T. Schneiderman, Attorney General, New York, NY (Anisha Dasgupta, Valerie Figueredo, and Ester Murdukhayeva of counsel), for respondent.



SGROI, J.


OPINION & ORDER
The State of New York commenced this proceeding pursuant to Mental Hygiene Law article 10 against Kerry K., a detained sex offender, alleging that he suffers from a mental abnormality as defined in that statute (see Mental Hygiene Law § 10.03[e]) and, thus, requires civil management (see Mental Hygiene Law § 10.03[q]). Upon a finding of probable cause to support the petition, a nonjury trial was held, after which the Supreme Court concluded that Kerry K. suffers from such a mental abnormality. After a dispositional hearing, the court issued an order of strict and intensive supervision and treatment (hereinafter SIST).
This appeal from the SIST order raises the issues of whether the failure to hold the probable cause hearing and the trial on the petition within the statutory time frames required dismissal of the petition. It further presents the questions of whether the Supreme Court erred by permitting the State to rely upon sealed records obtained from local authorities, and in admitting hearsay testimony from the State's experts, as the basis for their opinions, regarding two convictions of sex offenses of which Kerry K. was later exonerated. We conclude that the failure to conduct the probable cause hearing and trial within the statutory time frames did not deprive the court of jurisdiction or, under the circumstances, violate Kerry K.'s due process rights. We further hold that Mental Hygiene Law § 10.08(c) permits the State to obtain, from local government entities, sealed records relating to an offender's commission or alleged commission of a sex offense. However, because we conclude that the court erred in admitting the hearsay basis testimony regarding convictions of which Kerry K. was exonerated, and that this error was not harmless, we remit the matter to the Supreme Court, Suffolk County, for a new trial on the issue of whether Kerry K. suffers [*2]from a mental abnormality.
On October 23, 1997, Kerry K. was convicted, after a jury trial, of rape in the first degree and sentenced to an indeterminate term of imprisonment of 7 to 21 years. On March 4, 2013, prior to Kerry K.'s conditional release date, the State filed a petition for civil management of Kerry K. The original return date of March 14, 2013, was adjourned several times to conform to the Supreme Court's schedule and due to decisions by two Supreme Court Justices to recuse themselves. Thus, the probable cause hearing, rather than being held within 30 days after the petition was filed as specified in Mental Hygiene Law § 10.06(g), was held on May 10, 2013. After the hearing, the court found that probable cause existed to believe that Kerry K. was a sex offender requiring civil management.
Prior to trial on the petition, Kerry K. moved to preclude the State from relying upon certain sealed records it had obtained from the Suffolk County Police Department and the Suffolk County Probation Department. The records included an arrest report, a victim deposition, and a supporting deposition concerning an arrest in 1979 for rape and sodomy, which charges were dismissed prior to indictment. Additionally, the records included police reports, a victim deposition, and a presentence report concerning an arrest in 1981, which resulted in convictions, in 1982, of rape in the first degree and burglary in the first degree, among other crimes. Those convictions stemmed from separate incidents occurring in 1978 and 1981 involving the same victim. In 1978, the victim walked in on a burglary of her home and was raped by the perpetrator. Three years later, the perpetrator again broke into the victim's home, told her he was "back here for another visit," and raped her at knifepoint. After serving almost 11 years of the term of imprisonment imposed upon those convictions, Kerry K. was exonerated through DNA evidence and awarded damages for unjust conviction and imprisonment (see Kotler v State of New York, 255 AD2d 429).
In addition to seeking to preclude the State's reliance on the sealed records, Kerry K.'s motion sought to preclude, as unreliable hearsay, any expert testimony about the 1979 charges which had been dismissed and the 1982 convictions which had been vacated. In an order dated August 29, 2013, the Supreme Court concluded that the State properly obtained the sealed records from the Suffolk County Police Department and the Suffolk County Probation Department, and granted a cross motion by the State to unseal the records. The court deferred a determination as to whether the experts could testify regarding the dismissed charges and vacated convictions, ruling that it would decide the issue at trial on a "question by question basis."
A nonjury trial on the issue of whether Kerry K. suffered from a mental abnormality began on February 24, 2014, which was beyond the 60-day period specified by statute for commencement of the trial after the probable cause determination (see Mental Hygiene Law § 10.07[a]). At trial, the State presented testimony from Dr. John Thomassen and Dr. Ronald Field, forensic psychologists.
Based upon their review of various records, including police reports and victim statements, all of which the experts testified were records customarily relied upon in their profession, Drs. Thomassen and Field testified that Kerry K. had been arrested five times for offenses involving sexual conduct. The experts testified that arrests without a conviction were important to an analysis of whether Kerry K. had a mental abnormality. Dr. Thomassen explained that, although arrests without convictions were less reliable, charges of sex offenses are dismissed for a variety of reasons. Dr. Thomassen indicated that he looks at witness depositions, police reports, and other evidence to "make a probable determination that it may or may not have happened."
The experts recounted that Kerry K. was arrested on April 17, 1979. Dr. Thomassen testified that, according to the sworn statement of the complainant in that case, who was then 17 years old, she had gone to Kerry K.'s house at 3:00 a.m., after meeting him in a bar earlier that night, and when she refused to have sex with him, Kerry K. put a gun to her head and raped her. The charges were dismissed prior to indictment, the experts testified, because the complainant decided that she could not go forward in prosecuting the charges since she had engaged in consensual sex with Kerry K. after the incident.
The experts further testified, based upon a sworn victim statement, about an arrest on April 30, 1980, that resulted in a conviction. The complainant in that case, who was 16 years old, had known and socialized with Kerry K. for a period of time. On the night of April 25, 1980, Kerry K. took the complainant to his apartment and stated that he "wanted her." According to the testimony, when the complainant refused, Kerry K. allegedly took her arm, twisted it behind her back until she started to cry out, "threw her on the bed," twisted her arm "a few other times," and raped [*3]her. The experts testified that, with respect to this incident and subsequent conduct, Kerry K. pleaded guilty to rape in the third degree and two counts of attempting to bribe a witness.
The experts next recounted that Kerry K. was arrested on September 29, 1981, regarding the two incidents that occurred in 1978 and 1981, resulting in the 1982 convictions of two counts of rape in the first degree, two counts of burglary in the first degree, and burglary in the second degree. The experts testified that Kerry K. was next arrested on April 8, 1996, in connection with an incident that occurred 2½ years after he had been released from prison on the 1982 convictions. With respect to that arrest, Kerry K. was convicted in 1997, upon a jury verdict, of rape in the first degree.
According to the experts' testimony, a sworn statement of the complainant in that case indicated that she was driving at 3:00 a.m. when Kerry K. pulled up his car next to hers, and after showing her a badge, had her pull over her car. The experts testified that Kerry K. approached the complainant with a knife, grabbed her after she attempted to flee, drove her to an isolated area, walked her into the woods, and raped her. The complainant alleged that Kerry K. had a bottle with a hose on it, which he then used to squirt a substance in her vagina that smelled like gasoline. The complainant reported that Kerry K. told her that he had "a fantasy to have sex with a woman against her will."
Based upon his review of all of the relevant records, Dr. Thomassen testified that he diagnosed Kerry K. with sexual sadism and unspecified personality disorder with antisocial narcissistic traits. According to Dr. Thomassen, Kerry K.'s antisocial personality traits allowed him to act on his sadistic impulses, thus predisposing him to commit sex offenses. Moreover, Dr. Thomassen testified, the fact that Kerry K. committed the most recent offense after being incarcerated for almost 11 years, his lack of willingness to discuss in treatment his sex offenses and proclivities, and his statements that he lied just to get through the treatment program, led to the conclusion that Kerry K. would have serious difficulty controlling his impulses. Dr. Thomassen noted that the degree to which an individual cooperates with treatment is an "important determiner" of whether he or she will have serious difficulty in controlling sexual impulses. On these bases, Dr. Thomassen opined that Kerry K. had a mental abnormality.
Dr. Field diagnosed Kerry K. with paraphilia not otherwise specified (hereinafter NOS) and antisocial personality disorder, based upon his review of relevant records and his interview with Kerry K. The paraphilia diagnosis was grounded upon Dr. Field's perception of a pattern, established by Kerry K.'s behavior and reported fantasies, of being aroused by engaging in sex with nonconsenting individuals. Dr. Field's diagnosis of antisocial personality disorder was based upon Kerry K.'s admissions during an interview of "rule-breaking behavior" before the age of 15, followed by adult criminal behavior displaying aggressiveness, impulsivity, lack of remorse, and disregard for the safety of others. Dr. Field testified that Kerry K.'s paraphilia, or deviant sexual interest, predisposed him to commit sex offenses, and the antisocial personality disorder, characterized by lack of regard for the rights of others, added "fuel to the sexual behavior," making it "more dangerous and potentially more frequent." Dr. Field concluded, similarly to Dr. Thomassen, that Kerry K. had serious difficulty in controlling his impulses and suffered from a "mental abnormality" (Mental Hygiene Law § 10.03[i]).
Kerry K. presented testimony from Dr. Roy Aranda, a licensed psychologist, who concluded that Kerry K. did not have a mental abnormality. Dr. Aranda testified that he did not find evidence that Kerry K. suffered from a conduct disorder before the age of 15, as is necessary for a diagnosis of antisocial personality disorder. Further, Dr. Aranda testified that he did not find evidence of a deviant sexual disorder. Dr. Aranda opined that Dr. Field's diagnosis of paraphilia NOS was improperly based on the mere facts that Kerry K. committed two rapes.
At the conclusion of the trial, the Supreme Court found that, "having considered . . . all the testimony and exhibits," the State had met its burden of proving by clear and convincing evidence that Kerry K. suffered from a mental abnormality. Following a dispositional hearing, the court concluded that Kerry K. was a sex offender requiring SIST, and issued an order setting forth mandatory conditions of that regimen. This appeal followed.
Delay in Holding Probable Cause Hearing and Trial
The Sex Offender Management and Treatment Act and its main component, Mental Hygiene Law article 10, "are designed to reduce the risks posed by and to address the treatment needs of those sex offenders who suffer from mental abnormalities that predispose them to commit repeated sex crimes" (Matter of State of New York v Rashid, 16 NY3d 1, 5). Thus, upon a finding [*4]by a three-member case review team, consisting, in part, of mental health professionals, that a detained sex offender approaching anticipated release suffers from a mental abnormality, the statute permits the Attorney General to file a petition for civil management of the offender (see Mental Hygiene Law §§ 10.03[g], [i]; 10.06[a]). The statute further provides:
"Within thirty days after the sex offender civil management petition is filed, or within such longer period as to which the respondent may consent, the supreme court . . . shall conduct a hearing without a jury to determine whether there is probable cause to believe that the respondent is a sex offender requiring civil management" (Mental Hygiene Law § 10.06[g]).[FN1]
If the court determines that probable cause has been established, the respondent either is committed to a secure treatment facility, or, upon his or her consent, remains in the custody of the Department of Corrections and Community Supervision pending trial on the petition (see Mental Hygiene Law § 10.06[k]).
The probable cause hearing in the present case was not held until 67 days after the filing of the petition. Kerry K. argues that because the hearing was not held within 30 days of the filing date, the Supreme Court was deprived of jurisdiction to adjudicate the petition. We reject that contention.
" The question of subject matter jurisdiction is a question of judicial power: whether the court has the power, conferred by the Constitution or statute, to entertain the case before it'" (Matter of Ballard v HSBC Bank USA, 6 NY3d 658, 663, quoting Matter of Fry v Village of Tarrytown, 89 NY2d 714, 718). Article 10 provides authority for the filing and adjudication of civil management petitions in the Supreme and County Courts (see Mental Hygiene Law §§ 10.06, 10.07). There is no language in the statute conditioning that grant of jurisdiction on compliance with the 30-day time period or indicating that the failure to conduct a probable cause hearing within the specified 30-day period terminates the court's jurisdiction to adjudicate the petition (see Matter of State of New York v Keith F., 149 AD3d 671; see also Matter of State of New York v Boutelle, 85 AD3d 1607, 1608; cf. Matter of Grossman v Rankin, 43 NY2d 493, 501; Matter of Mott v Division of Hous. & Community Renewal of State of N.Y., 140 AD2d 7, 9). Further, there is no statutory provision that grants the remedy of dismissal of such a petition based on delay in holding a probable cause hearing (cf. CPL 30.30[1]). Nor can an intent to terminate the court's jurisdiction be implied from the statutory context.
To the contrary, article 10 "states repeatedly that failure to comply with various deadlines does not affect the validity of the petition or the various actions subject to those deadlines" (Matter of State of New York v Keith F., 149 AD3d at 672; see e.g. Mental Hygiene Law §§ 10.05[g]; 10.06[h]; 10.08[f]). One example with particular significance here is Mental Hygiene Law § 10.06(h). When a respondent is at liberty when the petition is filed and is ordered returned to confinement, or when a respondent is eligible for release prior to the probable cause hearing and release is stayed, Mental Hygiene Law § 10.06(h) provides a shortened period—72 hours—for holding the probable cause hearing. That provision expressly provides that "[a]ny failure to commence the probable cause hearing within the time periods specified shall not result in the dismissal of the petition and shall not affect the validity of the hearing or the probable cause determination" (Mental Hygiene Law § 10.06[h]). It would be unreasonable to conclude that failure to comply with the time limit constitutes a jurisdictional defect resulting in the dismissal of the petition under circumstances where the respondent is detained when the petition is filed, but not under circumstances where the respondent has been returned to confinement or detained past a release date.
Accordingly, given the statutory context, as well as its remedial purpose of protecting the public while providing treatment to those suffering from a mental abnormality (see Mental Hygiene Law § 10.01; Matter of State of New York v Floyd Y., 22 NY3d 95, 104; see generally Matter of Mott v Division of Hous. & Community Renewal of State of N.Y., 140 AD2d at 9), we conclude that the failure to hold the probable cause hearing within 30 days is not a jurisdictional [*5]defect.
We additionally reject Kerry K.'s contention that the delay in holding the probable cause hearing violated his right to due process. There is no doubt that a substantial liberty interest was implicated here (see Matter of State of New York v Ted B., 132 AD3d 28, 35; Matter of State of New York v Raul L., 120 AD3d 52, 63; see also Mental Hygiene Law § 10.06[h] [setting forth a shortened hearing deadline after passage of a respondent's conditional release date]). Nevertheless, in light of the significant process afforded Kerry K. prior to the hearing, including two separate pre-petition reviews by mental health professionals, the right to request an evaluation by a psychiatric examiner, and appointment of counsel (see Mental Hygiene Law §§ 10.05[d], [e], [g]; 10.06[c], [e]), the relatively brief delay, occasioned not by the State's unreadiness but by the recusal of two Supreme Court Justices, did not deprive Kerry K. of due process of law.
As to the delay in commencing Kerry K.'s trial, the record demonstrates that Kerry K. consented to certain adjournments, and, in any event, that he was not ready for trial prior to February 2014, as his expert was conducting his evaluation and preparing his report until that time. Accordingly, dismissal is not warranted due to the delay in commencing trial (see Matter of State of New York v Trombley, 98 AD3d 1300, 1302).
The State's Access to Sealed Records
Kerry K. next argues that the State should not have been granted access to, or permitted to rely upon, the records kept by the Suffolk County Police Department and the Suffolk County Probation Department regarding the 1979 rape charge and the 1982 convictions, which cases terminated in his favor and, thus, were sealed pursuant to CPL 160.50. The State responds that the records were properly unsealed pursuant to Mental Hygiene Law § 10.08(c).
That statute provides:
"Notwithstanding any other provision of law, the commissioner, the case review panel and the attorney general shall be entitled to request from any agency, office, department or other entity of the state, and such entity shall be authorized to provide upon such request, any and all records and reports relating to the respondent's commission or alleged commission of a sex offense, the institutional adjustment and any treatment received by such respondent, and any medical, clinical or other information relevant to a determination of whether the respondent is a sex offender requiring civil management" (Mental Hygiene Law § 10.08[c]).
Kerry K. concedes that, pursuant to this statute, sealed records held by the courts and other State entities may be disclosed. He contends, however, that the statutory phrase "any agency, office, department or other entity of the state" operates to prevent local government entities, such as county police departments and probation departments, from disclosing sealed records. We disagree with this interpretation of section 10.08(c).
"The primary goal of the court in interpreting a statute is to determine and implement the Legislature's intent" (Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d 328, 335; see Artibee v Home Place Corp., 28 NY3d 739, 745). " There is, of course, no more persuasive evidence of the purpose of a statute than [its] words'" (New York Psychiatric Assn., Inc. v New York State Dept. of Health, 19 NY3d 17, 25, quoting New York State Bankers Assn. v Albright, 38 NY2d 430, 437). Where, however, adherence to a statute's plain meaning produces an " unreasonable'" result, " plainly at variance with the policy of the legislation as a whole,'" the courts will " follow[ ] that purpose, rather than the literal words'" (New York Psychiatric Assn., Inc. v New York State Dept. of Health, 19 NY3d at 25-26, quoting New York State Bankers Assn. v Albright, 38 NY2d at 437; see Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman, 52 NY2d 463, 471). Moreover, where there are ambiguities in statutory language, courts look to the purpose of the legislation as well as the statutory context to resolve those ambiguities (see Matter of Shannon, 25 NY3d 345, 351-352; People v Ballman, 15 NY3d 68, 72-73).
In Matter of State of New York v John S. (23 NY3d 326), the Court of Appeals held that Mental Hygiene Law § 10.08(c) superseded the sealing procedures set forth in CPL 160.50, so as to permit disclosure of such sealed records. In so holding, the Court recognized that Mental Hygiene Law § 10.08(c) contemplates "broad disclosure" of " any and all records and reports relating to the respondent's commission or alleged commission of a sex offense'" (Matter of State [*6]of New York v John S., 23 NY2d at 340, quoting Mental Hygiene Law § 10.08[c]). The Court observed that "by authorizing disclosure of records relating to the alleged commission of a sex offense,'" Mental Hygiene Law § 10.08(c) "necessarily contemplate[d]" the release of records "document[ing] sex offenses that did not result in valid adjudications of guilt" (Matter of State of New York v John S., 23 NY3d at 341). Such records regarding arrests, charges, or allegations that did not result in convictions will often be in the possession of local law enforcement authorities, such as police departments and departments of probation. Thus, to read the statute literally so as to restrict authorized parties to accessing records from State entities would not only be arbitrary, but would function to frustrate the broad disclosure of relevant information intended by the Legislature.
Indeed, the Court of Appeals acknowledged in John S. that "presentence reports, police reports, and victim's statements, among other documents in the possession of official entities[,] are the types of records the legislature contemplated the state would have access to in an article 10 proceeding" (id. [emphasis added]). The question of whether such disclosure could be had from local authorities was not before the Court in John S., since, although the State had originally sought to unseal records held by the New York County District Attorney's Office and the New York City Police Department, that aspect of the application had proven unnecessary, and the only records unsealed were maintained by the New York County Clerk, an official of the State Supreme Court. However, the Court of Appeals' reference to "official entities" is instructive, and suggests a more reasonable interpretation of the phrase "any agency, office, department or other entity of the state" (Mental Hygiene Law § 10.08[c]).
Construing section 10.08(c) to permit authorized parties to obtain records from local government entities, in addition to State entities, will assist mental health professionals in forming "[a] detailed psychological portrait of a sex offender" (Matter of State of New York v Donald DD., 24 NY3d 174, 188; see Matter of State of New York v Dennis K., 27 NY3d 718, 729). In this way, disclosure of such records aids in carrying out one of the main purposes of the legislation, i.e., to furnish a "balanced response" to the compelling need to protect the residents of this state by providing procedures which will effectively cull the "small group" of sex offenders "who, because of a mental abnormality, cannot control their sexually violent behavior," from the majority of sex offenders, who "are not in this category" and "need not and should not be confined past the expiration of their criminal sentences" (Sponsor's Mem, Bill Jacket, L2007, SB3318, ch 7). In other words, permitting authorized parties to obtain records from local authorities likely to possess relevant information regarding a respondent's history of sex-offending conduct will serve the interests of protecting the public and properly identifying those offenders who cannot control their sex-offending conduct due to a mental abnormality and require treatment, as was the overall aim of the Sex Offender Management and Treatment Act.
Accordingly, in the present case, the Supreme Court properly unsealed the records kept by the Suffolk County Police Department and the Suffolk County Probation Department concerning Kerry K.'s alleged commission of prior sex offenses, and properly declined to preclude the State's reliance upon these records on the ground that they were improperly disclosed.
Determination that Kerry K. Suffers from a Mental Abnormality
Finally, Kerry K. challenges the Supreme Court's determination that he suffers from a mental abnormality. Initially, we reject Kerry K.'s contention that this determination was against the weight of the evidence. In reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and it may render the judgment that it finds warranted by the facts, taking into account that in a close case the trial judge had the advantage of seeing and hearing the witnesses (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499; Matter of State of New York v Raul L., 120 AD3d at 59).
A "[m]ental abnormality" is "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03[i]). Here, the Supreme Court's determination that the State demonstrated, by clear and convincing evidence (see Mental Hygiene Law § 10.07[d]), that Kerry K. suffers from such a mental abnormality was warranted by the facts. The State presented evidence that Kerry K. suffered from paraphilia NOS, "a viable predicate mental disorder or defect that comports with minimal due process" (Matter of State of New York v Shannon S., 20 NY3d 99, 107), as well as antisocial personality disorder, which together predisposes him to commit sex offenses and causes him serious difficulty in controlling that [*7]conduct (see Matter of State of New York v Raul L., 120 AD3d at 60; see also Matter of Floyd Y., ____ NY3d ____, 2017 NY Slip Op 07381). Although Kerry K.'s expert disagreed with these conclusions, the court's determination to credit the testimony of the State's expert witnesses instead of the testimony of Kerry K.'s expert witness is supported by the record, and we find no basis to disturb it (see Matter of State of New York v Raul L., 120 AD3d at 60; Matter of State of New York v R.W., 99 AD3d 1010, 1011).
However, we conclude that reversal is nonetheless required in light of the Supreme Court's error in admitting unreliable hearsay testimony from the State's experts. In Matter of State of New York v Floyd Y. (22 NY3d 95), the Court of Appeals held that information on which experts relied in forming their opinions may be admissible in article 10 proceedings, even though the information consists of hearsay statements which would otherwise be excluded. Such "basis hearsay" is not admitted for its truth, but rather "to assist the factfinder with its essential article 10 task of evaluating the experts' opinions" (id. at 107). As the Court of Appeals has explained, "[f]actfinders in article 10 trials cannot comprehend or evaluate the testimony of an expert without knowing how and on what basis the expert formed an opinion" (id. at 108).
However, recognizing that article 10 proceedings implicate "a liberty interest of the highest order," the Court of Appeals has held that "[d]ue process requires any hearsay basis evidence to meet minimum requirements of reliability and relevance" before it can be admitted at such a proceeding (id. at 105, 109). Thus, hearsay basis testimony of an expert witness is admissible "if the hearsay is reliable and its probative value in assisting the [factfinder] to evaluate the expert's opinion substantially outweighs its prejudicial effect" (Matter of State of New York v John S., 23 NY3d at 331; see Matter of State of New York v Charada T., 23 NY3d 355, 361; Matter of State of New York v Floyd Y., 22 NY3d at 109).
Kerry K. first challenges the admission of expert testimony regarding the 1979 rape and sodomy charges, which were dismissed prior to indictment. The admissibility of hearsay evidence regarding criminal charges, such as these, that result in neither acquittal nor conviction "presents a close question to be resolved by the trial court" (Matter of State of New York v John S., 23 NY3d at 343). "[D]ocumentary evidence supporting the charges may provide[ ] sufficient reliability [that] weigh in favor of admission' of the hearsay, but due process concerns remain in the absence of conclusive' proof of guilt" (id., quoting Matter of State of New York v Floyd Y., 22 NY3d at 110). "Accordingly, it is incumbent upon the trial court to closely scrutinize the evidence supporting the charges and ensure that the allegations are substantially more probative than prejudicial' before allowing the hearsay to be admitted" (Matter of State of New York v John S., 23 NY3d at 343, quoting Matter of State of New York v Floyd Y., 22 NY3d at 110).
The hearsay basis testimony regarding the 1979 rape and sodomy charges was sufficiently reliable. Although the matter never proceeded to indictment, the hearsay was derived from sources including a sworn statement made by the complainant on the day of the incident detailing what occurred, as well as a sworn statement by the complainant memorializing two lineup procedures in which she identified Kerry K. as the individual who raped her. Further, there was other reliable evidence in the form of a sworn supporting deposition by the owner and occupant of the first floor of the residence in which Kerry K. rented a room on the second floor. The deponent averred that she was awoken at about 3:30 a.m. on the morning of the incident by Kerry K. opening the garage door, and that she heard, from Kerry K.'s room situated above her bedroom, the sound of a girl crying as if she were being hurt. These sworn statements, together with the police reports and a presentence report documenting a later interview with the complainant's mother, rendered the hearsay information regarding the 1979 charges sufficiently reliable.
Moreover, the probative value of that information substantially outweighed its prejudicial effect. Dr. Field's opinion that Kerry K. had a mental abnormality was based, in part, upon his perception of a pattern of behavior displaying an interest in having nonconsensual sexual activity with young women, of which the 1979 incident was a part. Additionally, Dr. Field relied upon that incident in concluding that this interest spanned a period longer than six months, as required for a diagnosis of paraphilia. Thus, the testimony regarding the 1979 incident was important in evaluating Dr. Field's diagnosis and ultimate conclusion that Kerry K. suffered from a mental abnormality (see Matter of State of New York v John S., 23 NY3d at 345-346).
The experts' testimony about the vacated 1982 convictions, however, did not satisfy the reliability and relevance requirements for admission of hearsay basis evidence. As the Court of Appeals has observed, "unlike adjudications and admissions of guilt, an acquittal cannot provide the [*8]basis for reliability" (Matter of State of New York v Floyd Y., 22 NY3d at 110). Further, "[c]harges that resulted in acquittal are surely more prejudicial than probative on the question of the respondent's mental abnormality" (id.). Thus, "acquittal of criminal charges bars admission of those accusations, absent some other basis to substantiate them" (id.).
In the present case, the information regarding the 1982 convictions was even less reliable and relevant than information concerning charges of which a respondent has merely been acquitted. An acquittal on a particular charge indicates that the People were unable to prove the defendant's guilt of that charge beyond a reasonable doubt. Here, in contrast, the 1982 convictions were vacated, on consent of the Suffolk County District Attorney's Office, based on the results of DNA testing conducted by Kerry K.'s and the State's experts, and Kerry K. later affirmatively proved his innocence by clear and convincing evidence (see Kotler v State of New York, 255 AD2d at 429-430). Thus, it was error to permit the State's experts to testify about the 1982 convictions, and this error deprived Kerry K. of due process (see Matter of State of New York v Floyd Y., 22 NY3d at 110).
Under the circumstances, the error was not harmless. This error of constitutional magnitude cannot be deemed harmless unless there was no "reasonable possibility the [factfinder] could have reached another verdict" had it not heard basis testimony about the vacated convictions (Matter of State of New York v Floyd Y., 22 NY3d at 110; see Matter of State of New York v Walter R., 118 AD3d 714, 716). Here, not only did the Supreme Court admit testimony concerning the 1982 convictions themselves, but the experts were permitted to expound upon their opinions concerning the validity of the convictions, despite the subsequent proceedings.
When the assistant attorney general asked Dr. Thomassen whether Kerry K. was "exonerated" on the charges resulting in the 1982 convictions, Dr. Thomassen replied that the convictions were "vacated," for reasons having "to do with the evidence" and "with the procedure in court." Dr. Thomassen first indicated that "the person [who] testified as to the DNA evidence misrepresented himself" and "was chastised in some way because of that." Next, Dr. Thomassen explained that DNA evidence taken from the victim's underwear did not match Kerry K., and suggested that the conviction was vacated not necessarily because Kerry K. was innocent, but because there was "an inconsistency" in the victim's statement that she had not had sex with any man other than her husband, and the fact that the DNA on her underwear did not match her husband or Kerry K. Dr. Thomassen thus suggested that the DNA evidence was not necessarily exculpatory because the victim may have been lying about not having engaged in sexual relations with men other than her husband. Indeed, Dr. Thomassen later opined that it was "likely" that Kerry K. was the perpetrator of the 1978 and 1981 "brutal and sadistic sex offenses." Dr. Field similarly testified to his opinion that "the exoneration didn't mean [Kerry K.] didn't commit the crime."
Although this was a nonjury trial, the presumption that a trial justice, sitting as the finder of fact, considers only competent evidence in reaching a verdict (see People v Livingston, 184 AD2d 529) does not logically extend to this case, where the trial justice erroneously allowed inadmissible evidence over proper objection (see People v Pabon, 28 NY3d 147, 158). Absent some reliable indication that, notwithstanding the erroneous ruling, the trial justice knows that the evidence must be disregarded, we cannot presume that the trial justice, acting as the finder of fact, will forgo consideration of the evidence during the course of the trial or in reaching a verdict (see id. at 158). Here, the trial justice never indicated that he understood that the evidence should be disregarded, and there is no reason to believe that the trial justice, having permitted the inadmissible testimony, nevertheless did not consider it. In light of the highly prejudicial nature of the inadmissible testimony, we cannot conclude that there is no reasonable possibility that the verdict would have been different had it not been considered (see Matter of State of New York v Floyd Y., 22 NY3d at 110; Matter of State of New York v Walter R., 118 AD3d at 716).
Kerry K.'s remaining contentions are academic in light of our determination.
Accordingly, a new trial must be held on the issue of whether Kerry K. suffers from a mental abnormality. Thus, the order is reversed, on the law, the finding of mental abnormality is set aside, and the matter is remitted to the Supreme Court, Suffolk County, for a new trial on the issue of mental abnormality and, if necessary, a new dispositional hearing.
CHAMBERS, J.P., DUFFY and BARROS, JJ., concur.
ORDERED that the order is reversed, on the law, without costs or disbursements, the finding of mental abnormality is set aside, and the matter is remitted to the Supreme Court, Suffolk [*9]County, for a new trial on the issue of mental abnormality and, if necessary, a new dispositional hearing.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: The offender is the respondent in an article 10 proceeding, and is referred to as such in the statute and case law.